**Edwin F. KRIST and Marion R. Krist, Appellees,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Appellant.**

No. 792, Docket 73-1058.

United States Court of Appeals, Second Circuit.

Argued May 21, 1973.

Decided Aug. 21, 1973.

William A. Friedlander, Washington, D. C. (Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks, Elmer J. Kelsey, Janet R. Spragens, Attys., Tax Div., Dept. of Justice, of counsel), for appellant.

John J. Barnosky, Mineola, N. Y., for appellees.

Before KAUFMAN, Chief Judge, and KILKENNY * and OAKES, Circuit Judges.

OAKES, Circuit Judge:

This appeal from the Tax Court presents the single question whether a first grade teacher's sabbatical travel expenses abroad were deductible as "ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business," within the meaning of § 162(a) of the Internal Revenue Code of 1954. We hold that they were not.

Section 162(a) [1] provides that a deduction shall be allowed for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." To the extent education and travel expenses fall into this category, a deduction is permitted. Treas.Reg. § 1.162–5 (1967).[2] Rev.Rul. 64–176, 1964–1 Cum.Bull. 87.

---

* Of the Ninth Circuit Court of Appeals, sitting by designation.

1. Internal Revenue Code of 1954 (26 U.S.C. § 162(a)):
    (a) *In General.*—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business . . . . .

2. Treas.Reg. § 1.162–5 (1967) provides:
    (a) *General rule.* Expenditures made by an individual for education (including research undertaken as part of his educational program) which are not expenditures of a type described in paragraph (b)(2) or (3) of this section are deductible as ordinary and necessary business expenses (even though the

education may lead to a degree) if the education—

(1) Maintains or improves skills required by the individual in his employment or other trade or business, or

(2) Meets the express requirements of the individual's employer, or the requirements of applicable law or regulations, imposed as a condition to the retention by the individual of an established employment relationship, status, or rate of compensation.

(b) *Nondeductible educational expenditures*—(1) In general. Educational and expenditures described in subparagraphs (2) and (3) of this paragraph are personal expenditures or constitute an inseparable aggregate of personal and capital expenditures and, therefore, are not deductible as ordinary and necessary business expenses even though the education may maintain or improve skills required by the individual in his employment or other trade or business or may meet the express requirements of the individual's employer or of applicable law or regulations.

(2) *Minimum educational requirements.*—(i) The first category of nondeductible educational expenses within the scope of subparagraph (1) of this paragraph are expenditures made by an individual for education which is required of him in order to meet the minimum educational requirements for qualification in his employment or other trade or business   .   .   .   .

(3) *Qualification for new trade or business.*—(i) The second category of nondeductible educational expenses within the scope of subparagraph (1) of this paragraph are expenditures made by an individual for education which is part of a program of study being pursued by him which will lead to qualifying him in a new trade or business   .   .   .   .

(c) *Deductible educational expenditures.*—(1) *Maintaining or improving skills.*—The deduction under the category of expenditures for education which maintains or improves skills required by the individual in his employment or other trade or business includes refresher courses or courses dealing with current developments as well as academic or vocational courses provided the expenditures for the courses are not within either category of nondeductible expenditures described in paragraph (b) (2) or (3) of this section.

(d) *Travel as a form of education.*— Subject to the provisions of paragraph (b) and (e) of this section, expenditures for travel (including travel while on sabbatical leave) as a form of education are deductible *only to the extent such expenditures are attributable to a period of travel that is directly related to the duties of the individual in his employment or other trade or business.* For this purpose, a period of travel shall be considered directly related to the duties of an individual in his employment or other trade or business only *if the major portion of the activities during such period is of a nature which directly maintains or improves skills* required by the individual in such employment or other trade or business. The approval of a travel program by an employer or the fact that travel is accepted by an employer in the fulfillment of its requirement for retention of rate of compensation, status or employment, is not determinative that the required relationship exists between the travel involved and the duties of the individual in his particular position.

(e) *Travel away from home.*—(1) If an individual travels away from home primarily to obtain education the expenses of which are deductible under this section, his expenditures for travel, meals, and lodging while away from home are deductible. However, if as an incident of such trip the individual engages in some personal activity such as sightseeing, social visiting, or entertaining, or other recreation, the portion of the expenses attributable to such personal activity constitutes nondeductible personal or living expenses and is not allowable as a deduction. If the individual's travel away from home is primarily personal, the individual's expenditures for travel, meals and lodging (other than meals and lodging during the time spent in participating in deductible education pursuits) are not deductible. Whether a particular trip is primarily personal or primarily to obtain education the expenses of which are deductible under this section depends upon all the facts and circumstances of each case. An important factor to be taken into consideration in making the determination is the *relative amount of time devoted to personal activity as compared with the time devoted to educational pursuits.* The rules set forth in this paragraph are subject to the provisions of section 162 (a) (2), relating to the deductibility of certain traveling expenses, and section 274 (c) and (d), relating to allocation of certain foreign travel expenses and substantiation required, respectively, and the regulations thereunder.

(Emphasis supplied.)

■ Treasury Regulations § 1.162–5, first promulgated in 1958, provided that to deduct the expenses of travel while on sabbatical leave, a taxpayer had to establish that (1) *the primary purpose* of the travel was to maintain or improve employment skills, and (2) the travel had a direct relationship to the conduct of the individual's trade or business. The old regulations treated sabbatical leave travel "as primarily personal in nature and therefore not deductible." Treas.Reg. § 1.162–5(c) (1958). These were liberalized by the Commissioner, however, to permit deduction for sabbatical leave travel even of the "broadening, cultural type" provided it "has a direct relationship to the conduct of the individual's trade or business." *See* Rev. Rul. 64–176, 1964–1 Cum.Bull. 87. In 1967 the Regulations themselves were revised, effective after January 1, 1968, and the subjective "primary purpose" test was eliminated. The amended Regulations require only that the travel have a *direct relationship* with the taxpayer's employment or other trade or business. Treas.Reg. § 1.162–5(d) (1967). *Cf.* Carroll v. Commissioner, 418 F.2d 91, 94 (7th Cir. 1969); Furner v. Commissioner, 393 F.2d 292, 293 (7th Cir. 1968). For the taxable year here in question the taxpayer may utilize the somewhat more liberal 1967 Regulations, which apply retroactively even though they were not effective until 1968. Rev. Rul. 68–191, 1968–1 Cum.Bull. 67; Furner v. Commissioner, *supra*; Stanley Marlin, 54 T.C. 560, 563–565 (1970); Burke W. Bradley, Jr., 54 T.C. 216, 219 (1970).

■■ Thus the sole question in this case is whether and to what extent Mrs. Krist's sabbatical trip bore a direct and specific relationship to her skills as a teacher. Expenses which relate primarily to a taxpayer's self-improvement, rather than improvement of employment skills, are not deductible. Carroll v. Commissioner, *supra*, 418 F.2d at 95. Even as thus liberalized, the regulations place a substantial burden on the taxpayer to demonstrate that the travel provided direct and specific training helpful in the taxpayer's job. The Tax Court below held that "the petitioner's primary purpose in taking the trip was to maintain or improve her skills and that the majority of her activities were directly related to her teaching job."

The appellee, Mrs. Marion R. Krist, is an elementary school teacher. In 1967 and for seven years prior to that date she taught the first grade of the Barnum Woods School in the East Meadow District of Long Island. Mrs. Krist was a general classroom teacher who taught the usual first grade subjects which included reading, writing, arithmetic, science and social studies. The curriculum was integrated so that the various subjects overlapped. For example, the material for teaching reading often included social studies information.[3] There is nothing in the record to suggest that the first grade curriculum here involved is substantially different from that of most first grades.

In 1967 Mrs. Krist applied to her superiors to take a sabbatical leave from September 1, 1967, to June 30, 1968, for travel. Paragraph 14(a), Article VI of the Administrative Code for the East Meadow Schools, Long Island, New York, provides that a sabbatical leave may be granted for "Approved travel

---

3. The curriculum of taxpayer's first grade class included a topic of study in social studies which used a textbook entitled *Families and Social Needs*. Some of the headings of the book are as follows:

| Unit One | Families in Our Country |
| Unit Two | Where Families Live |
| Unit Three | Maps and Clothes |
| Unit Four | Families in Other Lands |
| | (a) In Japan |
| | (b) In Switzerland |
| | (c) In India |
| Unit Five | Houses in Other Lands |
| | (a) In Japan |
| | (b) In Switzerland |
| | (c) In India |

Mrs. Krist spent a brief amount of time in Switzerland and Japan, and none in India. Her trip did not concentrate on Switzerland and Japan.

that will broaden the background of the teacher's experience (itinerary submitted in advance)." When she applied for sabbatical leave, Mrs. Krist discussed her trip with her supervisor and told him of her plans. She was granted permission to take sabbatical leave by the school district and on September 22, 1967, she began her trip from New York City. Her itinerary and the cost allocable to her various activities as prepared by the petitioner are set forth in the margin.[4] The Tax Court allowed 80 per cent of the original deduction claimed for the tax year 1967.

Taxpayer, with her husband, took a 12-day freighter trip from New York to Belgium. They both had two-day visits in Brussels, Dublin and Limerick. After her husband left her on October 14, 1967, she went to Galway where she spent four days planning the remainder of her trip. She spent five more days in Ireland and 23 days in England followed by four days in France. In the course of 21 days of tours in Germany, Austria, Liechtenstein and Italy, she did visit Switzerland, one of her "social studies" countries, and while there visited a one-room school in Lucerne. She then spent a month in Spain and Portugal, with a ten-day side trip to Madeira, and took another freighter around the African Coast to Manila, Hong Kong and Korea, and finally reached her second social studies country, Japan. There she visited five cities and two schools, one large and one small, the latter of which she happened on "quite by accident." To be sure, she had visited a school in Galway and two in London, and she had seen an education film in Manchester.

There is no indication that the travel activities engaged in any of the countries were, except as above stated, other than those that any traveler would engage in. Taxpayer did not arrive at Japan until 1968, after the tax year in question. Other activities after leaving Japan give no indication of being in any way related to her teaching position. Her total time spent visiting schools on

| 4. Date | Travel Details | Amount |
|---|---|---|
| 9/22/67 | Belgian Line "SS Brenghel" .................. | $ 209.00 |
| 10/4/67 | Antwerp to Brussels—train .................. | ? |
| 10/6/67 | Air Brussels to London) | 46.00 |
| 10/8/67 | Air London to Dublin) | |
| 10/11/67 | Train Dublin to Limerick ..................... | ? |
| 10/14/67 | Bus to Galway and Cong and return to Galway ... | 13.00 |
| 10/19/67 & | | |
| 10/20/67 | Bus to Cahir, Waterford and train to Dublin .... | 14.00 |
| 10/23/67 | Air Dublin to London ........................ | 18.20 |
| 10/4–27/67 | Hotels ...................................... | 230.00 |
| 10/4–27/67 | Tours, sightseeing, factories, museums, etc. ..... | 60.00 |
| 10/27/67 | Air London to Paris .......................... | 26.32 |
| 10/27–30/67 | Travel, hotels in Paris, Loire Valley, Pherims .... | 50.00 |
| 10/31/67– | Hotels, travel, tours through Cologne, Stuttgart, | |
| 11/20/67 | Munich, Vienna, Liechtenstein, Switzerland, Northern Italy, Genoa ...................... | 200.00 |
| 11/20/67 | Air Nice to Barcelona to Madrid .............. | 51.00 |
| 11/20–22/67 | Pension tours ................................ | 15.00 |
| 11/23/67 | Train to Lisbon from Madrid ................. | 9.00 |
| 11/23–30/67 | Travel, tours, hotels in and about Lisbon, Portugal | 60.00 |
| 11/30/67 | S/S Funchal to Madeira return trip to Lisbon 12/10/67 .............. | 44.00 |
| 12/10–19/67 | Further travel, tours, hotels Lisbon, Portugal .......................... | 45.00 |
| 12/19/67 | S/S Tourens Freighter Wilhelmsen Lines leaving Lisbon proceeding around African Coast to Manila, Hong Kong, Korea, Japan ......... | 672.98 |
| | Total ..................... | $1,763.50 |

her own testimony was about five days out of six months; so far as appears she may have visited two or three families in Japan (albeit in 1968), and while she visited families in other countries those countries were not related to her teaching.

■ Appellee claims that if she had been on vacation, as opposed to a business trip, she would not have used freighters, would have stayed at better hotels, and her activities would have been geared to swimming and skating rather than the travel and visits she made which she said tired her each day. But the fact that she used a freighter for travel and didn't go to "the best hotels" doesn't indicate a thing one way or the other as to whether her travel was related to her teaching. Economy travel and travel accommodations are as consistent with a personal as with an educational trip. She was six weeks on one freighter trip itself, and while there did no specific reading directed toward her teaching although she did read Louis Nizer and *How to Tour Japan on Five Dollars a Day*.

When Mrs. Krist returned from her trip she did use in her teaching some of the pictures, costumes, dolls and games that she had acquired during the trip. She also acquired one technique abroad, the use of an individual slate and abacus at each child's desk, which she learned in Japan. Mrs. Krist was also required to write a report and make a presentation to the faculty regarding her trip on her return. The superintendent of the district certified that Mrs. Krist had "completed the program for which she was granted leave" and that "[t]he travel was undertaken for professional improvement in order to enhance her teaching skills."

■ We agree with Mrs. Krist that in certain cases travel abroad may be "directly related" to the teaching duties of the individual. The main consequence of the travel, however, must be to develop or improve a specific skill or area of knowledge which is of central importance to accomplishing the taxpayer's job. For example, in Gladys M. Smith, 26 CCH Tax Ct. Mem. 1281 (1967), the Tax Court held that a French and Latin teacher who took a Mediterranean cruise was entitled to a deduction. There the ship's crew was French. The teacher spent almost the entire time while aboard ship speaking French and attended many lectures in French. She also visited many sites important to French and Roman literature and history. Thus, though the form of travel indicated that it was personal—a Mediterranean cruise is, of course, generally a tourist holiday—almost every day the teacher developed specific skills and knowledge which were highly relevant to the performance of her teaching duties. *See also* Rev.Rul. 64–176, 1964–1 Cum.Bull. at 89; Stanley Marlin, *supra*, 54 T.C. at 566–567. Contrariwise, only the other day the Tax Court held that a second grade teacher on a sabbatical could not deduct her expenses visiting New Zealand, Australia, Asia, and Mediterranean and European countries as well as the Soviet Union and Canada; this was true although she visited schools in New Zealand and Australia and tried to visit them in Yugoslavia and the Soviet Union, and although she took photographs and purchased items which she donated to the school district. Carol J. Cochran, CCH Tax Ct.Rep. Dec. 31, 959(m), 32 CCH Tax Ct. Mem. 466 (1973).

■ In order for a § 162(a) deduction to be allowed for travel expenses, there must be an identification of the particular job skills that are improved through the travel. It is this crystallization of the job-related benefit which flows from the travel that permits a deduction under § 162(a) of the Code, and removes the travel expenses from the category of non-deductible § 262 personal expenses.

Out of a six-month trip, taxpayer visited schools for part or all of only five days. Taxpayer's visits to her social studies countries constituted but a small fraction of the total time on her trip. A general cultural broadening does not meet the test of the regulations. Carol J. Cochran, *supra*, 32 CCH Tax Ct. Mem.

at 469; *cf*. Carroll v. Commissioner, *supra*, 418 F.2d at 95; Cross v. United States, 336 F.2d 431, 434 (2d Cir. 1964). Here taxpayer's activities on her travels varied little from that of any tourist except that she spent more time on ships and perhaps more time with families than many would.

All travel has some educational value, but the test is whether the travel bears a direct relationship to the improvement of the traveler's particular skills. Such a relationship must be substantial, not ephemeral; the trip must be more than the "sightseeing" which both the old and new Regulations denote as "personal activity." *See* Treas.Reg. § 1.162–5(d) (1958); Treas.Reg. § 1.-162–5(e) (1967). *See also* Adelson v. United States, 342 F.2d 332 (9th Cir. 1965); Stanley Marlin, *supra*, 54 T.C. at 566; Leo J. Roy, 28 CCH Tax Ct. Mem. 607 (1969). We do not have to say here whether a trip abroad or two-thirds around the world for a first grade teacher could ever directly and substantially relate to educational skills. Suffice it to say here that taxpayer's trip in 1967 was not sufficiently so related as a matter of law.

We reverse the judgment below.