KENNETH W. ALLISON AND ERMA L. ALLISON, Petitioners, v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Allison v. Commissioner
Docket No. 9238-75.
United States Tax Court
T.C. Memo 1977-277; 1977 Tax Ct. Memo LEXIS 160; 36 T.C.M. (CCH) 1114; T.C.M. (RIA) 770277; August 22, 1977, Filed *160 Petitioners, husband and wife, were employed as high school teachers. In the summer of 1972 they toured Europe for 54 days. Held, petitioners have failed to establish that the major portion of the activities during their European trip was of a nature directly related to their respective teaching duties and which directly maintained or improved skills required of them in their respective employment. Accordingly their travel expenses are not deductible as ordinary and necessary business expenses. Kenneth W. Allison and Erma L. Allison, pro se. George W. McDonald, for the respondent. STERRETT
MEMORANDUM FINDINGS OF FACT AND OPINION STERRETT, Judge: Respondent determined a deficiency in petitioners' Federal income tax for *161 the calendar year 1972 in the amount of $702. Petitioners have conceded a minor issue in the statutory notice of deficiency and the sole issue remaining for our decision is whether petitioners, both high school teachers, are entitled to deduct, as an ordinary and necessary business expense under section 162(a), I.R.C. 1954, any portion of their travel expenses in the amount of $2,704 spent on a European tour during the summer of 1972. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. Petitioners, Kenneth W. and Erma L. Allison, husband and wife, resided in Colton, California at the time the petition herein was filed. Their joint Federal income tax return for the calendar year 1972 was filed with the director of the internal revenue service center, Fresno, California. Petitioners are high school teachers employed by the Colton Joint Unified School District. Petitioner Kenneth W. Allison teaches grades 10-12 and has been teaching for seventeen years. He teaches five classes each school day. Prior to and subsequent to the summer of 1972, he has *162 taught a combination of the following subjects each school semester: life planning, psychology, sociology, state government, U.S. government, and U.S. history. Petitioner Erma L. Allison has been teaching for eleven years in grades 9-12 and teaches educable mentally retarded (E.M.R.) students, who generally have IQ s of less than 70.Colton School District "mainstreams" all students, instead of using "abilitized" classes. Abilitized classes, as that term is used in California, are classes where college preparatory students are placed in one class and noncollege preparatory students in another. Mainstreaming does not differentiate between college and noncollege preparatory students and, in effect, places students in one class where the spread of the student's IQ could range from 70 to 140. E.M.R. teachers are backup teachers for the regular classroom teacher, tutoring five or six handicapped children at any one time. E.M.R. children in all four grades are taught in one classroom simultaneously. There are four class periods each day and the subjects taught are family living, social studies, math science, and English. Depending on the individual needs of an E.M.R. student he *163 or she may not need tutoring, by an E.M.R. teacher, in a particular subject. With respect to social studies the school year for the E.M.R. children is broken down into four quarters, with one of the following subjects being taught each quarter: world geography, U.S. history, driver's eduction, or U.S. government. However depending on the progress of a student, it is possible that, for example, a student being tutored during one quarter in world geography could continue studying the same subject for the other three quarters of the school year. The main objective in the social studies area is for the student to communicate, understand news events and realize what is occurring in other areas of the world. In the summer of 1972 petitioners and their two sons, then ages 17 and 18, went on a 54-day European tour to nine countries. No schedule or travel plans were submitted to their school district for approval and no educational credit or reimbursement was received from the school district for the trip. However, both principals of the schools where they taught, in "To Whom It May Concern" letters written in May, 1972, stated that they felt the European trip would be beneficial to *164 petitioners' teaching skills. This was their first trip to Europe and they were not on an organized tour. They visited museums, restaurants, libraries, historical sites, had conversations with many Europeans regarding various characteristics of life in Europe, collected books, brochures and post cards wherever they went, and took approximately 400 slide pictures of structures, landscapes, Europeans and places of historical interest. Upon returning home the slides were arranged in an orderly sequence and a tape recording was made narrating them based upon a diary petitioners kept on their trip. These slides and narration have been used by petitioners in their own classes and each has presented the slides and recording, at various times, to other classes. Petitioners donated these slides and narration to the school district and it has been catalogued in and become part of the school library. Although presentation to other classes does not require petitioners' attendance, petitioners are usually requested to be present to answer students' questions and relate their experiences. Petitioners have not received any additional compensation from the school system for these presentations.
*165 Petitioners on their 1972 joint return deducted $2,704 as employee business travel expenses for their 54-day European tour as follows: Plane, rail, boat fares
$1,086
Car rentals
478
Tolls
17
Lodging and meals
968
Admission fees
64
European driver license
3
Shots
4
Passports
31
Exchange and check fees
53
Total
$2,704
No portion of the above amount is allocable to the travel expenses of the petitioners' two sons. Respondent in his notice of deficiency, dated September 10, 1975, disallowed this $2,704 deduction explaining that "it has not been established that the amount represents an ordinary and necessary business expense or was expended for the purpose designated." Respondent does not dispute that $2,704 was spent on the European tour nor that petitioners prepared a very complete slide presentation with an accompanying diary. OPINION Petitioners' travel expenses are deductible under section 162(a) if they constitute "ordinary and necessary" business expenses. The parties agree that section 1.162-5(d), Income Tax Regs., establishes the guidelines for the deductibility of "travel as a form of education" under section 162 as follows: *166 (d) Travel as a form of education. Subject to the provisions of paragraph (b) and (e) of this section, expenditures for travel (including travel while on sabbatical leave) as a form of education are deductible only to the extent such expenditures are attributable to a period of travel that is directly related to the duties of the individual in his employment or other trade or business.For this purpose, a period of travel shall be considered directly related to the duties of an individual in his employment or other trade or business only if the major portion of the activities during such period is of a nature which directly maintains or improves skills required by the individual in such employment or other trade or business. The approval of a travel program by an employer or the fact that travel is accepted by an employer in the fulfillment of its requirements for retention of rate of compensation, status or employment, is not determinative that the required relationship exists between the travel involved and the duties of the individual in his particular position. The deductibility of said expenditures in the instant case depends upon whether the major portion of the activities *167 during the European trip is of a nature which is directly related to their particular employment duties and which directly maintains or improves skills required by petitioners in that employment. This determination is necessarily one of fact. Marlin v. Commissioner,54 T.C. 560, 565 (1970). Respondent on brief contends that a major portion of the activities undertaken during petitioners' 54-day trip did not directly maintain or improve skills required by them as teachers. Although they are no doubt better teachers and human beings as a result of their travel, petitioners engaged in activities typical of tourists on a general European tour. "The major portion of this trip was devoted to sightseeing, albeit a critical and carefully documented sightseeing." Moreover, respondent argues, petitioners' teaching subjects are only peripherally related to any knowledge gained on their trip. Mr. Allison teaches the following six subjects: life planning, psychology, sociology, state government, U.S. government, and U.S. history. The areas of European history, geography, art or culture would not receive more than passing attention in any of these courses and thus it is "hard *168 to see" how a major portion of the activities on the trip would directly maintain or improve his skills necessary to teach the aforenoted six subjects.
Furthermore Mrs. Allison teaches E.M.R. students who generally have IQs of less than 70. Family living, math science, English, and social studies are her four subject areas and the social studies area is further divided into world geography, U.S. history, driver's education, and U.S. government. Therefore only one-sixteenth of an E.M.R. student's curriculum is related to the European trip. Also Mrs. Allison testified that her basic objective is to help the E.M.R. students function in a productive capacity in a complex society. Although audio-visual aids assist in that endeavor it is, again, "hard to see" how knowledge of European history, geography or culture would be of any but the most peripheral benefit to those students. Additionally, although respondent agrees that the fact that petitioners have placed their slide collection and the narration thereto in the school library and that they assist in giving this presentation to other classes is commendable and indicates their dedication to the teaching profession, nevertheless *169 they do this voluntarily, during their free periods, and receive no extra pay or teaching credit. Respondent concludes that from the above, the main consequence of their trip cannot be said to have maintained or improved specific skills which are of central importance to accomplishing their jobs. Petitioners on brief argue that their entire itinerary was planned so that they could visit a number of homes, villages, museums, historical sights, legislative and governing activities, and school and educational activities throughout Europe. A large number of secondary school students lack sufficient reading skills and the intent of this trip was to develop a series of audio-visual materials to provide students with "first hand" knowledge of global activities of which they are an integral part.Petitioners' activities were not comprised of those of a typical tourist. They did not travel on organized tours, did not stay in tourist hotels and did not obtain data and information exclusively for their own benefit. To the contrary, petitioners contend that they have provided documentation to verify that one of the most important areas of their observations was to visit and observe the "European *170 year around school system." Moreover, relative to Mrs. Allison's E.M.R. students, respondent has failed to read and understand Public Law 94-142 [1] which states that all handicapped children between the ages of 3 and 21 must receive the same educational opportunities as any other child in the least restrictive environment. Therefore, under respondent's view of the case, he would prefer to violate Public Law 94-142 and deny this opportunity to the handicapped. Initially we note that the record does not contain documentation verifying petitioners' contentions that one of the most important areas of their observations was to visit and observe the European year around school systems. Furthermore, petitioners have entered in the record letters from their respective school principals, dated prior to their European departure, stating that petitioners' forthcoming trip will be extremely valuable to them and will enhance their respective teaching skills in their present employment. However, inconsistent with the stipulation of facts filed by the parties stating that Mrs. Allison teaches E.M.R. students family living, social *171 studies, math science, and English, of which social studies is broken into 4 subjects, with either world geography, U.S. history, driver's education or U.S. government being taught each quarter, is her principal's verification of her employment in the special education department as a world geography teacher. Although Mr. Allison's letter correctly stated his teaching subjects, which are verified by the stipulation, to wit: life planning, psychology, sociology, state government, U.S. government, and U.S. history, we observe that not one area is primarily related to European history, geography, art, or culture. We do not doubt that petitioners used every opportunity to relate their travel experiences to the students nor do we doubt that their observations and experiences in Europe were of significant benefit to themselves as well as others; however, the fact remains that petitioners were not employed primarily to teach European geography, history, art or culture. We believe that a parent would expect, and hope, that his or her child, in Mr. Allison's class, would study the aforenoted subject areas that he was employed to teach.One could envision, at times, comparison of European *172 systems and cultures to these subject areas, but, based upon the record presented, we cannot state that the trip directly related to his employment duties as contemplated by the aforenoted regulations. "Such relationship must be substantial, not ephemeral; * * * [and] a general cultural broadening does not meet the test of the regulations." Krist v. Commissioner,483 F.2d 1345, 1350-1351 (2nd Cir. 1973). Also, we have previously found that Mrs. Allison's duties wit E.M.R. children are divided into 4 subject areas, one being social studies which is further divided into 4 subject areas. We do not agree with respondent's contention that this subject division necessarily allocates only one-sixteenth of an E.M.R. student's curriculum to the area of world geography. However based on Mrs. Allison's testimony, we have found that the main objective in the E.M.R. social studies area is for the student to communicate, understand news events and realize what is occurring in other areas of the world. Obviously, audio-visual materials are of substantial benefit to these students in providing them with a general awareness of our world but such materials can readily be obtained *173 from companies specializing in this media. [2] We agree with respondent that knowledge of European history, geography or culture would have only peripheral benefit to these students and that Public Law 94-142 is not violated by such a conclusion. As the nature of the controversy is essentially factual both parties have cited a host of cases sustaining their position but we will not attempt to distinguish them from the instant case.On the basis of the facts presented we cannot find that "[the] main consequence of the travel * * * [was] to develop or improve a specific skill or area of knowledge which is of central importance to accomplishing the [taxpayers]' [jobs]." (Emphasis added). Krist v.Commissioner,supra at 1350. While admittedly a close case our conclusion is that the relationship between the knowledge garnered by the petitioners on their trip abroad and their particular duties (subjects taught) is too tenuous to permit the attachment of a business expense *174 label within the meaning of the regulations. While probably of little solace to the petitioners in view of our holding, we cannot restrain from noting in conclusion our admiration for the obvious devotion of both petitioners to their important work. Decision will be entered for the Respondent. Footnotes
1. Act of November 29, 1975, Pub. L. 94-142, 89 Stat. 773.↩
2. We note respondent has allowed petitioners' deductions, relating to their European trip, for books and pamphlets, slides and film, and books and supplies in the amount of $89.↩