GLADYS L. HAYNIE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Haynie v. Commissioner
Docket No. 1602-73.
United States Tax Court
T.C. Memo 1977-330; 1977 Tax Ct. Memo LEXIS 108; 36 T.C.M. (CCH) 1326; T.C.M. (RIA) 770330; September 26, 1977, Filed Gladys L. Haynie, pro se. Ronald L. Sheiman, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: Respondent determined deficiencies in petitioner's Federal income taxes as follows: Year
Deficiency
1969
$1,201.00
1970
1,417.08
The only issue presented is whether petitioner, an assistant principal of a racially and culturally integrated high school, is entitled to deduct as ordinary and necessary business expenses under section 162(a)[1] her travel expenses to various foreign countries while on sabbatical in 1969 and 1970. *109 FINDINGS OF FACT Some of the facts have been stipulated and these, together with attached exhibits, are found accordingly. Petitioner Gladys L. Haynie was a legal resident of Los Angeles, California, at the time of filing her petition in this case. She timely filed her Federal income tax returns for the taxable years 1969 and 1970 with the District Director of Internal Revenue, Los Angeles, California. Her filing status was single. Ms. Haynie currently resides in Berlin, Germany, where she is principal of the Berlin American School. Prior to the years in issue petitioner was employed in the Los Angeles City School System as an English teacher in the Watts area. Immediately after the Watts riots she was selected to be an assistant principal in one of the high schools there. At the request of the school system and her superintendent, she was transferred to two other high schools which were suffering from severe and sustained racial problems in the aftermath of the Watts riots. The first school, East Los Angeles, was 99 percent Mexican-American; the second, San Fernando High School, was proportionately one-third Black, Mexican-American, and White. Her major responsibilities *110 as assistant principal related to the handling of racial and riot problems both in the high school and in the community, developing curriculum, tailoring educational programs to the needs of these particular students and evaluating overall goals and new educational approaches. In addition, she was part of an administrative team that shared accountability for student and extracurricular activities, athletic programs, educational programs and clubs. Petitioner's main duty involved projects to foster better race relations and to improve the position and relation of the high school in a community whose residents were characterized by racial, cultural and social diversity. Petitioner left on an approved sabbatical from San Fernando High School. Upon her return she was reassigned to Dorsey High School, which was 85 percent Black and 15 percent Japanese, to aid the faculty in coping with racial, drug and community difficulties. She instituted a curriculum which concentrated on foreign language, social studies and English in an effort to provide better educational opportunities for those of diverse cultural backgrounds. She also conducted seminars for teachers and students on school *111 systems she had observed abroad and instructed similar community workshops for parents. From techniques derived from observing classrooms abroad she also instituted a specific educational program to aid the teaching of students from differing language backgrounds. While not required, a sabbatical is used by the California school system as a method to encourage employees to maintain and improve their working skills. When petitioner decided to take sabbatical leave, she submitted her proposal for educational travel to the Los Angeles City school system and it was accepted. The plan consisted of a statement of intent and an accompanying itinerary of proposed educational travel to various countries, the purpose of which was to gain insights into solutions to local educational problems; specifically, to observe and analyze school systems of other countries in an effort to understand and evaluate motivation and learning techniques which could be applied in Los Angeles; to compare the emerging countries' approaches to education with the historical educational systems of Europe in order to relate those concepts to the American educational experience regarding students and parents from *112 differing cultural backgrounds. From August 21, 1969, to July 31, 1970, petitioner journeyed to Europe, Asia, Africa, the Far East and Southeast Asia, covering approximately 44 countries and 59 major cities. Notwithstanding certain personal aspects of her travels, she routinely devoted her professional endeavors to numerous educational categories, i.e., visiting and observing foreign secondary schools and universities, discussing educational problems and concepts with teachers, administrators, and government officials, gathering study materials, and devoting herself to overcoming cross-cultural barriers to education. Her detailed journal records show that in every country she methodically contacted universities, public and private schools and, except for those rare instances such as Poland where she was denied entrance, she visited schools, observed classrooms and held discussions with educators and students. Petitioner also held discussions with government officials on issues of education and race. Included in these talks were the Board of Education, the Race Relations Board, the Government Commissioner, and the Conservation Research Agency in England; the Educational Department *113 in the Hague, the United States Information Services in Finland; the Central Education Office in Athens, Greece; the Education Offices in Barcelona, Spain, and Conakry, Guinea; and the Commissioner of Communication in Cairo, Egypt. She met with school officials, educational leaders, newsmen and Peace Corp directors and teachers in Zaire, Ethiopia, Kenya, and Egypt. Frequently petitioner was escorted by education officials in other countries with whom she had come in contact either through the American Embassies abroad or when teaching in the United States. In Stockholm, Sweden, petitioner met with the teacher training staff where she was asked to evaluate the schools she had visited and to discuss the latest educational reforms in America. In addition to her academic activities, petitioner devoted a considerable amount of her time to the development of cross-cultural sensitivity to foreign youth. These endeavors included spending time with a musical youth group in Ireland, a drug rehabilitation center in Paris, France, a child care center and kindergarten in Denmark, an orphanage in Italy, and a small Black community in Athens, Greece. Petitioner discussed European psychiatric *114 problems and techniques with a medical doctor in Scotland; lectured to classes at American schools in Conakry, Guinea, as well as reviewed films in that country designed to do mass teaching in underdeveloped countries; granted an educational interview for radio and television in Sierra Leone; and participated in a question-answer discussion with an American cultural attache at a college in Nigeria. Petitioner claimed educational expense deductions in the amount of $4,396 for 1969 and $6,340 for 1970. Included in these amounts were the following items: air transportation expenses of $2,596 in 1969 and $3,630 in 1970, and hotel and local travel expenses of $1,800 from August 21, 1969, to December 31, 1969, and $2,710 from January 1, 1970, to July 31, 1970. In his notice of deficiency respondent disallowed all of the claimed deductions explaining that petitioner had not established that those deductions were ordinary and necessary business expenses. OPINION We must decide whether the travel expenses incurred [2] by petitioner while on sabbatical leave were directly related to her employment as an educator so as to entitle her to a business expense deduction under section 162. *115 These travel expenditures are within the scope of business expenses only if the main purpose of the travel was to develop or improve a specific skill or area of knowledge which is central to accomplishing the taxpayer's job. [3] Thus, petitioner is permitted a deduction if it can be factually determined that a major portion of the travel was undertaken primarily to maintain or improve skills required of petitioner in her employment. Marlin v. Commissioner,54 T.C. 560, 564 (1970); Krist v. Commissioner,483 F. 2d 1345, 1350 (2d Cir. 1973). *116 Petitioner asserts that respondent applied too narrow an interpretation of the law in her case by utilizing standard guidelines designed for a traditional teaching role and by refusing to recognize the unusual job demands upon her as a school administrator who attempted to improve educational opportunities in troubled schools within racially and culturally diverse neighborhoods.
Respondent concedes that a minor portion of such travel was devoted to activities directly related to skills required by petitioner's job, thereby entitling her to a deduction for the pro rata cost of that portion, but he contends that the majority of the travel was a personal expense and, therefore, not deductible. As to the disputed business portions of such travel, it is respondent's contention that while petitioner's activities are laudatory, they are no different than those which one would expect to be engaged in by a tourist with similar interests. We disagree in view of the particular circumstances involved herein. We find that a major, rather than a minor, portion of the travel was directly related to developing skills necessary for the petitioner to effectively administer a high school in a *117 multi-racial, multi-cultural community during that period of time. The evidence persuades us that petitioner's travel, albeit lengthy and varied, contained sufficient activities of a business nature to meet the primary purpose requirement of the regulations. We are mindful that some activities can be defined as standard tourist fare. However, we think these instances were interspersed among extended and intense business and professional endeavors. At issue is the definition of petitioner's role as a school administrator. Respondent contrasts that role to the situation in Marlin v. Commissioner,supra, and argues that Edith Marlin, a history teacher, was permitted a business travel deduction only because she spent her entire trip visiting historical places, whereas in this case petitioner's travel was too general to be considered necessarily related to her job. We find this reasoning myopic. An assistant principal is not any less an educator than a teacher merely because the assistant principal has less pupil contact. A school administrator should not be denied *118 an educational travel deduction based on teaching-related criteria alone. The responsibilities here encompass a myriad of tasks ranging from aiding and evaluating teacher performance to handling familial relationships and community situations, as well as coping with those routine administrative tasks that include budget, staffing, curriculum, planning and government funding and grants. More importantly, there are specific periods in history which compel educators to reexamine the educational process. The fifties, after the launching of Sputnik, was such a period and, similarly, the racial strife of the sixties forced educators to seek educational techniques which would be relevant to minority groups. This was not an ephemeral scheme designed to paint a patina of serenity on a poor curriculum. Its success is measured in the peaceful quelling of those racial disturbances and by the emergence of individualism, genealogy, and new educational thought, all of which remain in the forefront today. [4]
*119 It is with this perspective that we view petitioner's travel in tandem with her role as a school administrator. This role, heretofore novel, became a common educational function where racial balance, community and family involvement are considered and where curriculums are restructured to meet these newly defined needs. To achieve these goals petitioner went abroad and repeatedly visited foreign and American schools, talked to teachers, administrators, superintendents and students. She regularly discussed and compared techniques, reform, law, finance and community as they relate to education. She visited with teachers, students, families and community and religious leaders. She publicly debated with educational leaders and participated in educational interviews and seminars. She visited hospitals and government officials to discuss race problems and psychiatric techniques with regard to youth. She embarked on several ventures designed to bring her in touch with young people everywhere. Moreover, petitioner has actually employed the knowledge and information gained in her foreign travels for concrete innovations in classroom techniques. She instituted a new curriculum at Dorsey *120 High School concentrating on techniques often used abroad for classrooms of diverse cultural backgrounds. She conducted seminars for teachers and students on school systems she had observed and similar community workshops for parents. Accordingly, we hold on this record that the major portion of petitioner's travel was undertaken primarily to maintain or improve skills required of her in her position as an assistant principal. Consequently, she is entitled to deduct her travel costs as ordinary and necessary business expenses under section 162(a). Decision will be entered for the petitioner. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended and in effect for the taxable years involved, unless otherwise indicated.↩
2. There is no dispute regarding substantiation of the expenses incurred. ↩
3. Section 1.162-5(d), Income Tax Regs., states: (d) Travel as a form of education↩. Subject to the provisions of paragraph (b) and (e) of this section, expenditures for travel (including travel while on sabbatical leave) as a form of education are deductible only to the extent such expenditures are attributable to a period of travel that is directly related to the duties of the individual in his employment or other trade or business. For this purpose, a period of travel shall be considered directly related to the duties of an individual in his employment or other trade or business only if the major portion of the activities during such period is of a nature which directly maintains or improves skills required by the individual in such employment or other trade or business. The approval of a travel program by an employer or the fact that travel is accepted by an employer in the fulfillment of its requirements for retention of rate of compensation, status or employment, is not determinative that the required relationship exists between the travel involved and the duties of the individual in his particular position.
4. The problems of the big city schools are indeed hydra-headed. In a situation where schools are often accused of not being able to cope with the large number of differing racial and cultural students they serve, the demands by parents and diverse cultural community leaders for bilingual and better programs are frequent. As stated in Newsweek, September 12, 1977, at 70, Col. 1: Inevitably, such innovations depend on the dedication of a handful of individuals, and touch only a minority of big-city school-children. In the end, the best hope for saving city schools seems to lie in a new breed of administrator who is not afraid to set strict standards and is flexible enough to use a wide variety of means to meet them. Having heard the sincere, candid and eloquent testimony of this petitioner, we are convinced she is a dedicated member of this new breed of school administrators.↩