RONALD LEE DOLLINS, ALICE CAMILLA DOLLINS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Dollins v. Commissioner
Docket No. 2787-80.
United States Tax Court
T.C. Memo 1982-394; 1982 Tax Ct. Memo LEXIS 352; 44 T.C.M. (CCH) 454; T.C.M. (RIA) 82394; July 14, 1982. *352 Petitioner Ronald taught industrial arts in a multiracial and multicultural junior high school in Minneapolis in 1977, and petitioner Alice was a second grade teacher in a low income area about 60 miles outside Minneapolis. They planned and took an extensive automobile tour of the western part of the United States in the summer of 1977, taking their two small children with them. Held: Petitioners are entitled to deduct as educational expenses that part of the travel, food, and lodgings expenses incurred on the trip attributable to Ronald, but may not deduct that part of those expenses attributable to Alice and the children. Allocation determined. Ronald L. Dollins and Alice Camilla Dollins, pro se. Matthew W. Stanley, for the respondent. *353 DRENNEN
MEMORANDUM FINDINGS OF FACT AND OPINION DRENNEN, Judge: Respondent determined a deficiency in petitioners' 1977 Federal income tax in the amount of $549. The only issue is whether petitioners are entitled to a business expense deduction for educational travel expenses. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and exhibits attached thereto are incorporated herein by reference. Petitioners Ronald L. and Alice C. Dollins, husband and wife, resided in Sumner, Wash., at the time of filing the petition herein. They filed a joint income tax return for the taxable year 1977 with the Internal Revenue Service, Ogden, Utah. Petitioner Ronald L. Dollins (hereinafter Ronald) was a schoolteacher in Minneapolis, Minn., prior to and during the taxable year in issue. He held a teaching certificate from the State of Minnesota in industrial education. He taught industrial arts and math in the seventh, eighth, and ninth grades. The industrial arts classes taught by Ronald included metal shop, woodshop, and art metal. These classes involved manual training in the use and construction of various *354 metal and wood products, a study of the ecological effect of processing the particular material, how it is transferred from one area of the country to another, and how it is marketed and sold. In addition to his teaching position, Ronald was the chairperson for his school's human relations committee and was the head of the Industrial Arts Department. The school at which Ronald taught had a multiracial and multicultural student body, a large portion of which consisted of American Indians, Blacks, and Mexican-Aericans. During the taxable year in issue 34 to 38 percent of the student body was American Indian. Petitioner Alice C. Dollins (hereinafter Alice) was also a schoolteacher. She taught at a school located in a low-income area about 60 miles outside of Minneapolis, which she Minneapolis, which she described as being "culturally deprived." Alice held a teaching certificate from the State of Minnesota in elementary education and music for Kindergarten through the twelfth grade, and during the taxable year in issue she taught the second grade. The subjects Alice taught included social studies, reading, science, and art. During July and August of 1977, petitioners took a *355 30-day automobile trip while their respective schools were on summer recess. While on this trip, they traveled throughout much of the western United States, including Kansas, [1]Colorado, Utah, Arizona, California, Oregon, and Montana. Petitioners' two children, ages 6 months and 3.5 years, accompanied them on this trip. The purpose of the trip was to improve petitioners' respective abilities as teachers. They planned this trip for over a year, and, prior to their departure, prepared an itinerary setting forth the places they intended to visit, and a list of goals they hoped to accomplish. In preparation for this trip, petitioners checked with the Internal Revenue Service to find out what they had to do in order to be entitled to a deduction for the cost of the trip. They were advised to keep a log indicating the mileage driven for purposes *356 of proof if the need for such proof arose. Accordingly, petitioners maintained a log which indicated the mileage driven as of the time of each log entry, the place visited, and some general remarks as to what they saw. While in Colorado, Utah, and Arizona, petitioners viewed Indians making and selling hand-crafted jewelry, which was made largely from ceder beads. Ronald made a special trip into certain mountain areas located in Utah to find such beads. Petitioners also visited the Red Rock Canyon in Utah, and took a tour through an aluminum smelter and a salt mine near Salt Lake City. In California, petitioners visited San Juan Capistrano, a city with a large Mexican-American population. While there, Ronald discovered that those people were engaged in metal work similar to that of the Mexican-American students in his class in Minneapolis. However, their methods of making metal art were different from those which he taught his students. Petitioners also visited the Redwood Forest in northern California, as well as various logging mills in both northern California and Oregon. Ronald took pictures of the forest and mills, and established a slide show for his woodshop class *357 in Minneapolis. On their way back to Minnesota, petitioners visited certain copper smelters and copper mines located in Montana. Ronald incorporated much of the skills he had acquired on this trip into his industrial arts classes. For instance, the techniques he learned for making metal art while in San Juan Capistrano, and for the making of Indian jewelry, were taught to his metal art classes, and the slide show of the Redwood Forest and logging mills became a part of his woodshop class. Ronald hoped that these additions would generate more interest to learn on the part of his American Indian and Mexican-American students and would teach them something of practical utility. Alice found that the trip helped her to become a more effective teacher because she gained first-hand experience of many of the topics discussed in her class. For example, she stated that because of her personal experience, she was able to more meaningfully describe both the temperature extremes encountered in the mountains and what cactus actually looked like. Neither of petitioners' respective employers required them to take this trip, and they were not reimbursed for their expenses incurred thereon. *358 On their return filed for the taxable year 1977, petitioners deducted $2,560 for expenses incurred on this trip. The amount deducted included only those expenses which were attributable to either Ronald or Alice. It did not include any expenses attributable to the children. In his notice of deficiency, respondent disallowed $2,331 [2] of this deduction. OPINION The only issue is whether petitioners are entitled to a business expense deduction under section 162(a) [3] for their unreimbursed expenses incurred while driving through the western United States. Petitioners claim that the trip maintained or improved their skills as schoolteachers, and that they are therefore entitled to deduct the expenses incurred on such trip. To the contrary, respondent contends that the major portion of the activities engaged in by petitioners on this trip *359 did not directly maintain or improve their schoolteaching skills, but rather were in the nature of sight-seeing and were therefore personal, nondeductible expenditures. Travel expenditures incurred for educational purposes are deductible as business expenses "only if the major portion of the activities [during the period of travel] * * * is of a nature which directly maintains or improves skills required by the individual" in his employment. Sec. 1.162-5(d), Income Tax Regs. Whether the activities engaged in were so related is a question of fact, the burden of proof of which is on petitioners. Adelson v. United States,342 F.2d 332, 335 (9th Cir. 1965); Rule 142(a), Tax Court Rules of Practice and Procedure.
First, with respect to Ronald, we find that the major portion of the activities engaged in on the trip directly maintained or improved his skills as a teacher of industrial arts in a multiracial, multicultural school. Ronald taught classes in metalshop, woodshop, and art metal, and the ecology attendant thereto. Many of his students were either American Indian, Mexican-American, or Black. Prior to embarking on this trip, petitioners prepared both an *360 itinerary of the places they intended to visit and a list of goals they hoped to accomplish in regard to improving their teaching skills. Ronald believed that his multicultural students would relate better and be more interested if he could present to them from his own observations the methods used by people of their own culture in practicing the skills he was teaching, and this proved to be true. From the evidence presented it appears that nearly all of the places visited were directly related to the classes taught by Ronald. For example, new techniques for making metal art which Ronald learned from Mexican-Americans in California, and for making Indian jewelry which he learned from American Indians, were incorporated into his metalshop and art metal classes, both of which had many American Indian and Mexican-American students. Also, the pictures which Ronald took of the forests and logging mills in northern California and Oregon were made into a slide show and incorporated into his woodshop class. Employing the knowledge and information gained from his travels into his teaching techniques strongly supports Ronald's position as it "tends to demonstrate the substantial connection *361 between such travel and the maintenance and improvement" of Ronald's skill as an industrial arts teacher. [4]Marlin v. Commissioner,54 T.C. 560, 567. It is true that many of the places visited by petitioners were, at least to some extent, tourist attractions, and that the trip was not required by Ronald's employer. However, while these factors tend to weigh against Ronald, [5] see Gino v. Commissioner,60 T.C. 304, 311 (1973), revd. on other grounds 538 F.2d 833 (9th Cir. 1976), in view of the classes which he taught, the racial and cultural background of many of his students, the advance preparation taken before making the trip, including the establishment of an itinerary, the incorporation of the skills learned on the trip into his teaching techniques, and Ronald's credible statement as to the purpose for making such trip, we find that he has adequately differentiated his travel from that of an ordinary tourist. In addition, driving about 7,000 miles through the southwestern and western parts *362 of this country in the heat of mid-summer with two children, aged 3.5 years and 6 months, does not suggest that the primary purpose for the trip was pleasure. Accordingly, we hold that the trip directly maintained and improved Ronald's skill required as a schoolteacher. With respect to Alice, we find that the trip, while of some benefit to her professional skills, did not directly maintain or improve her skills required as an elementary schoolteacher. The evidence presented indicates only that the trip broadened her general scope of experience in life, which she in turn could share with her students. However, travel which merely provides cultural broadening does not satisfy the test of the regulations, Krist v. Commissioner,483 F.2d 1345, 1350 (2d Cir. 1973), revg. a Memorandum Opinion of this Court, nor does sharing her experiences from the trip with her students. [6]
*363 Alice taught a second grade class during the taxable year 1977, and the subject taught included social studies, reading, science, and art. The evidence presented fails to convince us that the experiences encountered on the trip, e.g., feeling the temperature extremes at mountain heights, and viewing cactus, directly maintained or improved Alice's skill as an elementary schoolteacher. We do not doubt that because of her experiences she was more able to motivate her students to learn, which in turn made her, at least to some extent, a more effective teacher. Nearly all travel has some educational value; the test, however, is whether the travel bears a direct relationship to the traveler's particular skills. "It is this crystallization of the job-related benefit which flows from the travel that permits a deduction under sec. 162(a) of the Code * * *." Krist v. Commissioner,supra at 1350. In the instant case, we do not find that such a relationship existed. Accordingly, the expenses incurred on the trip attributable to Alice may not be deducted. Because of our holding herein, we must determine how much of the cost of petitioners' trip is properly allocable to *364 Ronald, and thus deductible. The rule is established that where educational travel expenses are allowed as to one spouse and disallowed as to the other, only the portion of the travel expenses which would have been incurred had the qualifying spouse traveled alone are deductible. Marlin v. Commissioner,supra at 568. [7] Here, the $1,303 spent on automobile expenses (see n. 2, supra) would clearly have been incurred whether or not Alice had been present, and therefore the entire amount is deductible. The $1,028 expense incurred for meals and lodging, however, must be allocated equally between Ronald and Alice. [8] Therefore, $514 of such expense is deductible. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. Petitioners stated that the few days spent in Kansas were for purely personal reasons, and the expenses incurred while there were not claimed as a deduction. Petitioners also spent 1 day at Disneyland and 1 day in Seattle, Wash., for personal reasons, and none of their expenses connected with these stops were claimed as a deduction.↩
2. The deduction claimed by petitioners consisted of $1,028 for meals and lodging, $1,303 for automobile expenses, and $229 for camera repairs, film, and processing. Respondent allowed the latter expense.↩
3. All section references are to the Internal Revenue Code of 1954 as amended and in effect during the taxable year 1977.↩
4. See also Haynie v. Commissioner,T.C. Memo. 1977-330; Weiman v. Commissioner,T.C. Memo. 1971-92↩.
5. We note, however, that pursuant to sec. 1.162-5(d)↩, Income Tex Regs., it is not necessary that the travel be required by an employer in order to be deductible.
6. See Gibbons v. Commissioner,T.C.Memo. 1978-75; Weiman v. Commissioner,supra.↩
7. See Gibbons v. Commissioner,supra.↩
8. This amount does not include expenses attributable to petitioners' two children. See p. 6, supra.↩