David N. & Roslyn F. Weiman v. Commissioner.
Weiman v. Commissioner
Docket No. 589-70 SC.
United States Tax Court
T.C. Memo 1971-92; 1971 Tax Ct. Memo LEXIS 239; 30 T.C.M. (CCH) 372; T.C.M. (RIA) 71092; April 29, 1971, Filed Sidney W. Mintz, for the petitioners. Fred L. Baker, for the respondent. TANNENWALD
Memorandum Findings of Fact and Opinion TANNENWALD, Judge: The respondent determined a deficiency of $801.15 in petitioner's' income tax for the taxable year 1967. The two issues presented for decision are: (1) whether certain expenditures incurred by one of the petitioners constitute educational expenses, which are deductible under section 162; [1] and (2) the amount of *240 charitable contributions made by the petitioners during the year in question, which are deductible under section 170. Findings of Fact Some of the facts have been stipulated and are found accordingly. Petitioners, David N. Weiman and Roslyn F. Weiman, are husband and wife. Their legal residence at the time of the filing of the petition herein was in Brooklyn, New York. Their joint return for the calendar year 1967 was timely filed with the district director of internal revenue, Brooklyn, New York. During 1967, petitioner Roslyn F. Weiman was employed as a teacher of library [science] at Bildersee Junior High School in Brooklyn, New York. Mrs. Weiman's duties were essentially threefold: (1) administering the technical operations of the school library, (2) teaching the students about and encouraging them to use the library, and (3) serving as a resource person for the school. Mrs. Weiman was personally responsible for the selection of certain books for the library and she also was consulted about the books that individual teachers would request the school to order for the library. Mrs. Weiman and *241 her assistant shared the teaching of approximately twenty-five classes per week. The subject matter of the classes they taught was generally in one of three categories: (1) general library skills unrelated to any specific course being taken by the students, (2) orientation as to a particular subject which was part of a specific course being taken by the students, and (3) general information lectures designed to complement a certain course. During the spring of 1967, a decision was made to restructure the world geography course given ninth grade students in the New York City junior high schools. The revised course was to place increased emphasis on non-western clutures. It was introduced to certain ninth grade classes on an experimental basis during the 1967-68 academic year. In subsequent years, the revised course was given all ninth grade classes. The restructured course was entitled "World Studies: Eastern Civilizations." During July and August of 1967, Mr. and Mrs. Weiman were students at Sophia University, Tokyo, Japan. They were enrolled in an organized study program entitled "Contemporary Japan." [2] The curriculum included classes from 8:30 a.m. until 12:45 p.m. and periodic *242 afternoon field trips. Mrs. Weiman took two courses, one "Contemporary Japan" and one "Elementary Japanese," and audited others on Japanese art and architecture and Indian culture and religion. The summer academic program attended by the Weimans lasted only five weeks. Sophia University also offered three threeweek tours commencing at the conclusion of the academic program. Each participant had the option of a tour of Southern Japan, 373 a tour of South Asia (including Southern Japan, Taipei, Hong Kong, and Macao), or a world tour (including Southern Japan, Taipei, Hong Kong, Bangkok, India, the Middle East, and Rome). The Weimans selected the "world" tour. Of the three weeks involved in the threeweek "world" tour, five days were spent in Israel, one day in Rome, and about five days in India. Mrs. Weiman's total expenditures for the course at Sophia University and the subsequent tour were $1,988.59, made up as follows: Travel
$ 897.48
Room and board
435.00
Tuition
220.00
Books
30.00
Study tours 406.11
Total
$1,988.59
*243 Throughout petitioners' trip abroad, Mr. Weiman took photographs which were later made into some 1,600 slides, of which some 400 were used in connection with Mrs. Weiman's employment. For the purpose of taking these photographs, the Weimans purportedly purchased photographic equipment in Japan costing approximately $313.35, including $10 for flash bulbs. They also purchased film which was used and subsequently developed into slides. The cost of the film and developing was approximately $253. The information acquired by Mrs. Weiman in the courses taken at Sophia University was used by her in her performance of her duties as a teacher of library, and many of the slides were used in lectures she gave to the students. The slides, as well as other materials purchased by Mrs. Weiman in Japan, were located in the school library throughout the school year and were available for use by the Bildersee Junior High School students. In their 1967 tax return, petitioners claimed charitable deductions of $693. Respondent allowed $178 of this amount. Ultimate Finding of Fact Mrs. Weiman's attendance as a student at Sophia University was directly related to maintaining and improving her skills *244 as a teacher of library. Opinion The first issue before us is whether the expenses incurred by Mrs. Weiman for her course at Sophia University, which consisted of five weeks of classes and three weeks of field trips, constituted educational expenses which can be deducted under section 162 as ordinary and necessary business expenses. The parties have framed the issue in terms of considering the entire eight weeks as a whole. Consequently, they agree that the test of deductibility is that which applies to travel as a form of education. While we accept this frame of reference, we are not precluded from according different treatment to different parts of the time Mrs. Weiman spent abroad. See, Reuben B. Hoover, 35 T.C. 566 (1961). Cf. Stanley Marlin, 54 T.C. 560 (1970). Under respondent's regulations, educational expenses such as those incurred by Mrs. Weiman constitute ordinary and necessary business expenses if the education "[maintains] or improves skills required by the individual in his employment." Section 1.162-5(a)(1), Income Tax Regs. Where, as here, travel is involved, the expenditures are deductible "only to the extent such expenditures are *245 attributable to a period of travel that is directly related to the duties of the individual in his employment." Section 1.162-5(d), Income Tax Regs.[3]
The determination of the relationship between a taxpayer's travel and the skills required by his employment is a factual one. Cosimo A. Carlucci, 37 T.C. 695 (1962). Necessarily, the judgments which must be made will fall on either side of the line. The situation herein is complicated by the facts that Mrs. Weiman's duties as a librarian were very broad, that every librarian is obviously important to the general success of our educational institutions, and that world travel is often a personal *246 expense, which cannot be deducted under the express mandate of section 262. Compare James A. Carroll, 51 T.C. 213 (1968), affd. 418 F. 2d 91 (C.A. 7, 1969). On the other hand, common experience 374 teaches us that business and pleasure, unlike oil and water, can sometimes be mixed (see Wilson v. Eisner, 282 Fed. 38, 42 (C. A. 2, 1922)) and, if the necessary requirements are met, educational travel, even though pleasurable, can give rise to a deductible business expense. Stanley Marlin, supra. If the question were confined to the relationship of Mrs. Weiman's educational experience at Sophia University to her ability to administer the technical aspects of a library, as respondent suggests, we would be inclined to deny any deduction. Similarly, we would have serious doubts about allowing her any deduction if her stay in Japan had merely encompassed the usual attributes of vacation travel abroad, even though such travel might have had some educational overtones. But the situation herein is quite different. In the first place, the educational program was conducted by Sophia University on an organized basis with regular classes *247 and planned visits to various places directly related to the course of study. In the second place, Mrs. Weiman's duties envisaged much more than the administration of the school library. She was an important resource person for her colleagues and for the students. [4] Her increased awareness and understanding of Japanese culture would be of direct value to the "World Studies: Eastern Civilization" course. She would be better able to evaluate source materials for use in such a course, her selection of materials for the libarary would be likely to be more discriminating, and she would be in a position to provide other teachers and students with first-hand information. The evidence shows that she gave lectures on Japan and that she acquired materials from Japan for the school library. Based upon the record as a whole, and taking into account the fact that we found Mrs. Weiman to be a highly credible witness, we *248 are satisfied that the five-week organized program at Sophia University constituted education which "maintained or improved" her skills as a teacher of library at Bildersee Junior High School within the meaning of respondent's regulations. [5] Accordingly, we conclude that the expenses incurred in connection therewith constitute an allowable deduction. We are unable to reach the same conclusion with respect to Mrs. *249 Weiman's activities while on the three-week "world" tour. We are not satisfied either that the necessary nexus, under the current regulations, between those activities and Mrs. Weiman's skills has been established or that the trip was "undertaken primarily for the purpose of" maintaining or improving those skills within the meaning of the prior 1958 regulations. See footnote 3, supra. The time spent on the tour was relatively short, considering the area covered. Half of the three weeks was spent outside East Asia. Evidence as to the breakdown of time spent by locality or what was done during the week petitioners remained in East Asia (Southern Japan, Taipei, Hong Kong, and Bangkok) is extremely meager. We are unable, therefore, to differentiate petitioners' visits from the conventional visits of other tourists. That Mrs. Weiman may have shared her experiences with her students or contributed a few conventional tourist pamphlets to the school library is not sufficient to satisfy petitioners' burden of proof. Having reached these conclusions, we are still left with the problem of determining the proper amount to be deducted. As we interpret the evidence before us, all of the expense, *250 totalling $1,988.59, was directly involved in the five-week course at Sophia University except for $406.11 expended for "study tours." [6] Accordingly, we hold that $1,582.48 is deductible. 375 Petitioners also claim a deduction for "the costs of film, processing and printing, use of camera equipment and slide magazines, and the purchase of additional visual materials" incurred in connection with their trip. To the extent that such costs include the purported purchase price of photographic equipment ($313.35), they represent capital expenditures recoverable, if at all, only through depreciation. On the record before us, we have insufficient evidence as to the fact of expenditure (e.g., no sales slips or other written evidence were submitted) or as to the nature and useful life of such equipment to enable us to make any allowance in this regard. The amount of $263 is claimed for flash bulbs, film, and cost of *251 processing. Petitioners took a total of 1,600 slides, of which some 400 were used by Mrs. Weiman. Allowing for the fact that we have no evidence as to how the photographs should be allocated time-wise to the eight-week trip and for the further fact that there were some photographs which, if the slides had turned out satisfactorily, would have been used by Mrs. Weiman, and considering that respondent has not asserted that the cost of picture slides constitutes a capital expenditure rather than a deductible expense (an issue as to which we express no opinion), we have, upon the basis of the record before us, made our best estimate of the amount of the allowable deduction and conclude that it should be limited to $75. The second issue concerns the amount allowable as deductions for charitable contributions. Petitioners claimed a deduction of $693 for such contributions. Respondent allowed $178 (consisting of a $100 item which was specifically substantiated and $78 for estimated miscellaneous contributions) but disallowed the remainder. At trial, petitioners produced no receipts, records, or other specific evidence to substantiate any portion of the amount disallowed. We hold that they *252 have failed to sustain their burden of proof as to any deduction for the disallowed portion. Decision will be entered under Rule 50. Footnotes
1. All references are to the Internal Revenue Code of 1954, as amended.↩
2. Although both petitioners participated in the Sophia University program, only Mrs. Weiman's expenses were claimed as educational expenses. Thus, we will focus on her activities.↩
3. Since the year 1967 is involved, petitioners are entitled to rely either on the current regulations, which are quoted above and were adopted in 1968, or on the prior 1958 regulations, which adopted a primary purpose test. Rev. Rul. 68-191, 1968-1 C.B. 67↩. In view of our conclusion that, insofar as the five-week course at Sophia University is concerned, Mrs. Weiman met the test prescribed by the current regulations, no further inquiry on our part is necessary in regard to the expenses allocable to that period.
4. Mrs. Weiman's superior testified that the Bildersee School was very proud of its library because the librarians were involved in teaching, which was unusual, and that the quality of the librarians as resource persons was important to the overall quality of the library.↩
5. Aphrodite Thanos [Dec. 30,232(M)], T.C. Memo. 1970-193↩, heavily relied upon by respondent, is clearly distinguishable on its facts. The taxpayer-librarian in that case did not take an organized course of study but simply travelled to various European countries. Moverover, her duties as a librarian were confined to administering the library, with only an incidental responsibility for a 6-hour library skills course as part of freshman English. Consequently, while this Court agreed that the taxpayer's travels "enhanced her capabilities as a librarian to some extent," we denied the deduction because "the major portion of the activities engaged in * * * was not of such a nature as to directly maintain or improve the skills required in her employment."
6. Since Tokyo is almost half way around the world from New York, the amount of $897.48 expended for travel can be taken as the equivalent of a round-trip air fare between Tokyo and New York, which would be the proper measure of Mrs. Weiman's transportation expense.↩