WILLIAM GIBBONS, JR. and CLARALEE J. GIBBONS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Gibbons v. Commissioner
Docket No. 7647-76.
United States Tax Court
T.C. Memo 1978-75; 1978 Tax Ct. Memo LEXIS 436; 37 T.C.M. (CCH) 366; T.C.M. (RIA) 780075; February 27, 1978, Filed Lawrence B. Trygstad, for the petitioners. James D. Vandever, for the respondent. RAUM
MEMORANDUM FINDINGS OF FACT AND OPINION RAUM, Judge: The Commissioner determined a deficiency in petitioners' 1973 Federal income taxes in the amount of $793. The only issue to be decided is whether petitioners, a high school reading consultant and a junior high school librarian, are entitled under section 162(a) [1] to deduct as educational travel expenses costs incurred on a trip to Spain, France and Morocco. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts, together with the exhibit attached thereto, is incorporated *437 herein by this reference. Petitioners William Gibbons, Jr., and Claralee J. Gibbons, husband and wife, resided in Chatsworth, California, at the time the petition was filed. Their 1973 Federal income tax return was filed with the Western Service Center of the Internal Revenue Service at Ogden, Utah. Petitioners took an eight-week foreign trip, the costs of which are the subject of this case, from June 19, 1973, to August 17, 1973. On this trip, they traveled throughout various cities and towns in the countries of Spain, France and Morocco. Petitioners did not travel with an organized tour, but rather by means of a car they leased for ground transportation purposes. Typical places of interest visited during the course of the trip included art museums, cathedrals, palaces, historical sites, buildings, monuments, villages, and native craft or market areas. Petitioner William Gibbons, Jr., was employed in 1973 as the "reading coordinator" for Sylmar High School, a Los Angeles school with a student enrollment of 2,500 and a faculty of 108. At least half of Mr. Gibbons' time was spent as a master teacher, teaching reading to students in a two-teacher team-teaching format. The *438 focus of these reading classes was to foster improvement of reading comprehension by making individualized assignments of materials varying in difficulty according to each particular student's reading ability. Reading instruction is a part of the English department at Sylmar High School. In 1973-1974 Mr. Gibbons also spent one hour per day organizing and coordinating the team teaching and general reading instruction program. He had a staff of several full-time reading teachers. Mr. Gibbons' responsibilities in this function also included approving the purchase of books and materials other than ordinary textbooks from a special reading budget of $40,000 for 1973-1974. Approximately $3,000 was allocated to social studies materials. An additional duty of Mr. Gibbons in 1973-1974 was to serve for one period a day as a reading consultant to the social studies department. In this capacity he conferred with social studies teachers about use and difficulty of available reading materials, planned assignments for the reading program relating to social studies, and evaluated potential social studies materials for purchase. He also was responsible for having teachers from the social *439 studies department temporarily assigned to teach reading classes to expose them to techniques of using individualized reading materials to increase reading comprehension in social studies classes. Mr. Gibbons was given this assignment after returning from his trip. Finally, Mr. Gibbons taught in 1974 an in-service training class for teachers in different departments emphasizing the use of reading materials and reading comprehension. This was a duty separate from his regular duties and for supplementary pay. Mr. Gibbons did from 50-75 hours of reading and preparation for the trip on his own, but Mrs. Gibbons did the primary research and obtained the books for him. He spent some time becoming familiar with concepts taught in social studies and other classes and planned the trip with that background. Mr. Gibbons did not attend any organized classes, seminars or lectures on any subjects taught at Sylmar High School or on the subject of reading, and did not observe teaching methods in any foreign schools while on his 1973 trip. In 1973 and for the twenty-three years prior thereto, petitioner Claralee J. Gibbons was employed as school librarian at John A. Sutter Junior High School, *440 a Los Angeles city school. Mrs. Gibbons' principal duty as school librarian is to lend various forms of assistance to other teachers in their classroom teaching. In carrying out this responsibility, Mrs. Gibbons spends more than one-half of her time actually working with students sent to the library, either by lecturing to an entire class or to smaller groups to provide information for a certain course, or by helping students find information needed to complete special reports and library projects assigned in their regular classes. She teaches very few classes concentrating on general library skills unrelated to any specific course being taken by the students, but such skills are taught in the context of the pursuit of information for particular assignments. In addition to her teaching functions, Mrs. Gibbons helps teachers make their lesson plans and assignments. In both of these responsibilities, Mrs. Gibbons acts as an "educational resource person", utilizing or making available to teachers and students various relevant audio-visual and other educational media such as slides, film strips, recordings and books. Mrs. Gibbons is in charge of collecting this material for the library. *441 Other of Mrs. Gibbons' duties include supervision of budget preparation, public relations, and library bulletin boards. Finally, she is responsible for additions to and removals from the library's book and educational media collections. Approximately one-tenth of the books Mrs. Gibbons purchases for the library are concerned with European history and geography. Mrs. Gibbons spent from 200 to 250 hours planning and selecting the places to be visited on the 1973 trip. She consulted guide books and history books, as well as some teachers from the school regarding the trip and its possible relation to subjects they wanted to teach. While traveling, Mrs. Gibbons purchased or took hundreds of slides. The slides consist of pictures of cathedrals, scenes of historic interest and the like, of the sort which are available and normally purchased by tourists. They are now maintained at Mrs. Gibbons' school and are frequently used by her in lecturing to classes, working with student committees and individual students. In addition to the slides, Mrs. Gibbons also collected other materials such as post cards, pamphlets, books, and posters for use in the school. These were also of the *442 type available to tourists. Mrs. Gibbons did not attend any classes or lectures involving library skills, European history, art or architecture. She visited one Arabic library and a Koran school during her stay in Morocco. Mr. and Mrs. Gibbons both visited the same cities on their trip. However, because of their different interests, they occasionally engaged in separate activities while at a given location. Petitioners reported the following as deductible business expenditures relating to their foreign trip in 1973: Transportation
$ 747
Meals and lodging
1,195
Automobile expenses
796
Total travel expenses
$2,738
The Commissioner disallowed the deduction with the explanation that it was not established that travel as a form of education was directly related to the duties of petitioners' respective professions. OPINION The question to be decided is whether the cost of petitioners' 1973 trip to Spain, France and Morocco qualifies as a deductible educational expenditure under section 162(a) and the regulations promulgated thereunder. Section 1.162-5, Income Tax Regs., concerning expenses for education, is set forth in pertinent part in the margin. *443 [2]
*444 Under these regulations, the issue in this case is whether the major portion of petitioners' activities on their trip directly maintained or improved skills required in their respective employments. This determination is a question of fact which turns on the individual circumstances of each case. See, e.g., Marlin v. Commissioner,54 T.C. 560. Furthermore, the skill that must have been maintained or preserved must be one which is of central importance to accomplishing the taxpayers' jobs. Krist v. Commissioner,483 F. 2d 1345, 1350 (C.A. 2). [3] Because of the difference in the nature of skills required of William as a reading coordinator and of Claralee as a librarian, we will examine their respective claims for deductions separately. Marlin v. Commissioner,supra, at 565. 1. Educational travel expenses of William Gibbons, Jr. Upon consideration of the entire record, we find that the 1973 foreign trip does not qualify for a deduction as an educational travel expense of petitioner William Gibbons, Jr. Mr. Gibbons' main employment *445 responsibilities in 1973-1974 included teaching reading and supervising the reading program, with special emphasis on improving reading comprehension. He was essentially a member of the English department. His primary skill was the effective classroom use of multiple reading sources keyed to differences in student reading abilities. Undoubtedly Mr. Gibbons was better able to stimulate his students and had a deeper insight into their assignments after his foreign trip. However, it was not one of petitioner's primary duties to teach students substantive information about foreign countries. His job was to improve their reading skills and comprehension. We conclude that the benefits gained by petitioner on his trip were only incidental to his primary duties. Compare Marlin v. Commissioner,supra, at 566. Travel for the sake of generalized cultural broadening or for liberal education does not qualify for an educational travel expense deduction. See, e.g., Krist v. Commissioner,483 F. 2d 1345, 1350 (C.A. 2); Adelson v. United States,342 F. 2d 332, 335 (C.A. 9) (high school reading, English and journalism teacher). That Mr. Gibbons *446 acted as a reading consultant in the social studies department or that he approved the purchase of $3,000 worth of social studies reading materials does not change our result. This job took only one of his six periods, and it does not appear from the record that he was consulted for reasons other than his expertise regarding innovative teaching of reading comprehension skills. [4] Thus, because a major portion of the 1973 trip did not directly maintain or improve important skills required in Mr. Gibbons' job, a deduction for Mr. Gibbons' travel expenses must be denied. 2. Educational travel expenses of Claralee J. Gibbons. Although this is a very close case, and the result is not free from doubt, we hold that Mrs. Gibbons is entitled to a deduction for the costs of the 1973 trip attributable to her. Because each *447 particular case in this area turns on its facts and circumstances, no useful purpose would be served by a detailed analysis of each of the cases brought to our attention by the parties. Instead, we will set forth some of the considerations which lead us to conclude that Mrs. Gibbons' expenses are deductible. Mrs. Gibbons spent more than one-half of her time actually lecturing to or providing guidance to students. Compared to a traditional school librarian, Mrs. Gibbons' job was more directed towards participating in the teaching of materials covered by academic classes. [5] She was relatively less concerned with teaching library skills as such, other than those relevant to a particular library assignment, or with performing purely technical administrative functions in the library. Compare Thanos v. Commissioner,29 T.C.M. 873, 39 P-H Memo. T.C. par. 70,193, with Weiman v. Commissioner,30 T.C.M. 372, 40 P-H Memo. T.C. par. 71,091, appeal dismissed (nolle pros.) (C.A. 2). Therefore, travel as a form of education would more likely be of direct benefit towards maintaining or improving important skills needed by Mrs. Gibbons. *448 Mrs. Gibbons testified how she used her travel experiences in connection with history and art classes and how they maintained or improved skills required in her duties. [6] Her testimony was clear and direct, and she was a highly credible witness. Furthermore, Mrs. Gibbons was an educational resource person, and frequently made use of the materials she collected on her trip in both her work with students and with other teachers. This buttresses our conclusion that her trip was primarily job related. See Weiman v. Commissioner,supra; cf. Marlin v. Commissioner,supra, at 567. *449 We are fully cognizant of the fact that Mrs. Gibbons did not attend any organized classes overseas, and that many of the places and many of the slides and other materials brought from those places were not distinguishable from places visited or materials available to tourists. However, while these factors weigh against Mrs. Gibbons, we think that the large amount of time and effort expended by Mrs. Gibbons in planning the trip, reading history books and consulting with other teachers at the school -- all in furtherance of her credibly stated purpose to improve her skills in respect of the duties that she was actually performing -- serves adequately to differentiate her visit from that of ordinary tourists. See Marlin v. Commissioner,supra.
Mrs. Gibbons' 1973 trip directly maintained and improved important job skills. She is therefore entitled to her deduction. 3. Allocation of deductions attributable to Claralee J. Gibbons.We must determine how much of the $2,738 cost of petitioners' 1973 trip is properly attributable to Mrs. Gibbons and thus deductible. If a deduction for educational travel expenses is disallowed to one spouse and allowed to the *450 other, only that portion of the total travel expense which would have been incurred if the qualifying spouse had traveled alone is deductible. Marlin v. Commissioner,supra, at 568. Since it seems clear that Mr. Gibbons' presence on the trip did not increase the cost of car rentals or gasoline on the ground portion of the trip, the entire $796 claimed automobile expense is allocable to Mrs. Gibbons. See Marlin v. Commissioner,supra.However, in the absence of evidence relating to an allocation of other claimed expenses (transportation, $747, and meals and lodging, $1,195), they will be allocated equally to Mr. and Mrs. Gibbons and will be allowed only to the extent of Mrs. Gibbons' one-half. Therefore, petitioners are entitled to deduct $1,767 for educational travel expenses. Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended.↩
2. Section 1.162-5, Expenses for education. (a) General rule. Expenditures made by an individual for education (including research undertaken as part of his educational program) which are not expenditures of a type described in paragraph (b)(2) or (3) of this section are deductible as ordinary and necessary business expenses (even though the education may lead to a degree) if the education-- (1) Maintains or improves skills required by the individual in his employment or other trade or business, * * *
(d) Travel as a form of education. Subject to the provisions of paragraph (b) and (e) of this section, expenditures for travel (including travel while on sabbatical leave) as a form of education are deductible only to the extent such expenditures are attributable to a period of travel that is directly related to the duties of the individual in his employment or other trade or business. For this purpose, a period of travel shall be considered directly related to the duties of an individual in his employment or other trade or business only if the major portion of the activities during such period is of a nature which directly maintains or improves skills required by the individual in such employment or other trade or business.↩ The approval of a travel program by an employer or the fact that travel is accepted by an employer in the fulfillment of its requirements for retention of rate of compensation, status or employment, is not determinative that the required relationship exists between the travel involved and the duties of the individual in his particular position. (Emphasis supplied.)
3. See also Allison v. Commissioner,T.C. Memo. 1977-277↩.
4. As part of the reading consultant job, Mr. Gibbons arranged for social studies teachers to team teach reading↩ classes in order to expose them to the use of individualized teaching techniques for improving reading comprehension. This leads us to conclude that his relationship with the social studies department was essentially that of a reading teacher.
5. In this respect, Mrs. Gibbons' responsibilities differ from those of her husband. We have found that Mr. Gibbons was primarily a reading teacher rather than a teacher of substantive information about foreign countries.↩
6. Mrs. Gibbons' travel itinerary and travel goals bore a close relationship to the emphasis placed in foreign cultures by the social studies department. The chairman of that department testified that Mrs. Gibbons was viewed as an "extension of the history department", and that her expertise in humanities proved to be very useful to the history department. Mrs. Gibbons also testified that she made use of her trip experiences in making additions to and removals from the library collection. We doubt whether this factor would be dispositive by itself, but together with other factors it does carry some weight.↩