JAMES SUMMERS AND KETTY SUMMERS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Summers v. Commissioner
Docket No. 11698-79
United States Tax Court
T.C. Memo 1981-545; 1981 Tax Ct. Memo LEXIS 206; 42 T.C.M. (CCH) 1195; T.C.M. (RIA) 81545; September 24, 1981. James Summers, pro se. Beth L. Williams, for respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: This case was assigned to Special Trial Judge Randolph F. Caldwell, Jr., for trial in accordance with General Order No. 6, 69 T.C. XV (1978). The Court agrees with and adopts his opinion which is set out below. *208 OPINION OF THE SPECIAL TRIAL JUDGE CALDWELL, Special Trial Judge: Respondent determined deficiencies in income tax against petitioner James Summers [1] for 1972 and against petitioners James and Ketty Summers for 1973 and 1974, and additions to tax for fraud under section 6653(b) of the Code [2] against petitioner James Summers only for years and in amounts, as follows: Year
Deficiency
Addition to Tax
1972
$ 2,362.87
$ 1,181.44
1973
411.83
781.46
1974
339.48
540.27
In his answer, respondent has pleaded in the alternative that if the underpayment for each of the years 1973 and 1974 is found not to be due to fraud, then that such underpayments are due to negligence or intentional disregard of rules and regulations, thereby rendering petitioners liable for additions to tax under section 6653(a). The principal issue in the case is whether petitioner is liable for the additions to tax for fraud. However, there are a number of issues relating to the determination *209 of the underlying deficiencies, and these will first be disposed of. Those issues will be identified as they are discussed. Some of the facts were stipulated. The stipulations of facts, together with the exhibits identified therein, are incorporated herein by reference. Petitioners are husband and wife, and they resided in Michigan when they filed their petition in this case. Petitioner filed an individual return for 1972 on July 5, 1973, with the Service Center at Cincinnati. Petitioners filed a joint return for each of the years 1973 and 1974, on October 14, 1977, with the same service center. 1972
During 1972, as well as in 1973 and 1974, and during the approximately preceeding ten years, petitioner was employed as a public school teacher by the School District of the City of Garden City, Michigan (hereinafter, "the School District"). During 1972, petitioner also did business as a sole proprietor under the name of Summers' Basement Waterproofing. A. Income Adjustments. [3] -- Petitioner received wages from the School District for 1972 in the total amount of $ 16,806.07, with respect to which he was furnished a Form W-2 showing those wages as well as the *210 following amounts withheld therefrom: F.I.C.A. taxes (employees' share) $ 468, and contributions to the Michigan Public School Employees' Retirement Fund (sometimes hereinafter, "the Fund") $ 756.35. On his 1972 return, petitioner reported as wages from the School District only $ 15,581.72, excluding from wages the above described amounts that were withheld. In his notice of deficiency, respondent included the withheld amounts, totalling $ 1,224.35, in income. Respondent must be sustained on this issue. As to the F.I.C.A. tax withholdings, there is no provision in the Code for excluding such amounts from gross income, and it is firmly established law that only such exclusions as are explicitly authorized by the Congress are available to taxpayers. New Colonial Ice Co. v. Helvering, 292 U.S. 435 (1934). Considered from the deduction standpoint, section 275(a)(1)(A) explicitly prohibits the deduction of tax on employees under the Federal Insurance Contribution Act. Escofil v. Commissioner, 464 F.2d 358 (3rd Cir. 1972), affirming *211 T.C. Memo. 1971-131. As to the amounts withheld for petitioner's contribution to the Fund, again there is no provision for an exclusion thereof from gross income as has been attempted by petitioner here. Considered from the deduction standpoint, petitioner has sought the same deduction in three prior cases in this Court: T.C. Memo 1971-11, T.C. Memo. 1972-117, and T.C. Memo. 1974-162. For the reasons stated in those opinions, petitioner must likewise be held not entitled to a deduction for the contributions. B. Expense Deduction Adjustments. -- (1) Tuition Expense. -- On his 1972 return, petitioner claimed a miscellaneous deduction of $ 750.10 for amounts paid to St. John's Lutheran parochial school. Respondent disallowed the claimed deduction. This identical issue has twice been presented by petitioner to this Court, and twice been rejected. T.C. Memo. 1972-117, T.C. Memo. 1974-162. For the reasons stated in those cases, the claimed deduction for this personal expense must be denied here. Respondent must be sustained on this issue. (2) Rent expense. -- On the Schedule C of petitioner's 1972 return, *212 for his Summers' Basement Waterproofing proprietorship, petitioner claimed a deduction of $ 100 for "rent on business property." Respondent disallowed the claimed deduction. This amount represents a portion of the utilities (heat, electricity, and telephone) expenses incurred for petitioners' residence, from which he operated his proprietorship, which petitioner allocated as an expense of the proprietorship. The burden of proof on this issue rests upon petitioner, Welsh v. Helvering, 290 U.S. 111 (1933); Rule 142(a) of this Court's Rules of Practice and Procedure. While such an expense would appear to be an ordinary and necessary business expense under section 162(a), petitioner has given no evidence as to how he arrived at the $ 100 figure, such as the total utilities expenses and the precentage thereof he deemed allocable to his proprietorship. For petitioner's failure to carry his burden of proof, respondent must be sustained on this issue. (3) Employee Business Expense. -- On line 48 of the 1972 return, petitioner claimed a deduction of $ 400 for employee business expenses. There is no Form 2106 explaining the make-up of this deduction. Respondent *213 disallowed the claimed deduction. At the trial, petitioner was unable to recall what this deduction was for. For petitioner's failure to carry his burden of proof, respondent must be sustained on this issue. (4) Interest -- Mortgage. -- Home mortgage interest expense of $ 725.39 was claimed on the 1972 return. Of this amount, respondent disallowed $ 66.66. The disallowed portion represents the amount of F.H.A. mortgage insurance that petitioner paid. This issue was decided adversely to petitioner in his case at T.C. Memo. 1972-117. It must likewise be decided against him here. Respondent must be sustained on this issue. (5) Taxes. -- On the 1972 return, petitioner claimed a deduction for real estate taxes on the family residence in the amount of $ 756.47. He also deducted $ 100 as real estate taxes on business property on the Schedule C. Respondent did not disturb the $ 756.47 deduction, but he disallowed the $ 100 as a duplicate deduction. Respondent is clearly right, and he must be sustained on this issue. Petitioner is not entitled to deduct the same amount twice. (6) Medical Expenses. -- Petitioner claimed an itemized deduction *214 for medical and dental expenses of $ 756.74 on his 1972 return. Without going into the details of the computation, it suffices to say that the two elements making up the deduction were medical insurance premiums of $ 600, and medicines and drugs of $ 798.01. Respondent disallowed the claimed deduction. Petitioner and his family were provided total hospitalization and medical insurance (Blue Cross/Blue Shield) by the School District as a fringe benefit during 1972. The School District paid, in full, all the premiums for such total coverage in 1972. Inasmuch as petitioner did not pay the premiums, he is not entitled to a deduction therefor. As to the medicines and drugs, petitioner presented no evidence with respect thereto. Accordingly, no deduction can be allowed with respect thereto. Inasmuch as neither element of the claimed deduction is proper, respondent must be sustained on his disallowance. (7) Charitable Contributions. -- On his 1972 return, petitioner claimed, in a lump sum, $ 28,063.15 as a deduction for charitable contributions. The alleged donees were listed, as follows: First Church of the Nazarene; Youth for Christ; Back to God Hour; Rural Bible Mission; *215 United States Government; and State of Michigan. The parties have stipulated that petitioner is allowed to claim as deductions the following charitable contributions, which respondent verified from third parties: First Church of the Nazarene
$ 2,329
Youth for Christ
100
Back to God Hour
9
Rural Bible Mission
50
Total
$ 2,488
The disallowed portion of the claimed deduction, $ 25,575, represents, in overwhelming part if not intoto, amounts which petitioner claims to have donated to the United States Government and to the State of Michigan. The United States Government portion reflects amounts estimated by petitioner to equal the amount that had been collected from him and from his employers as F.I.C.A. (social security) taxes before 1973. The State of Michigan portion represented solely amounts which petitioner estimated to equal amounts paid into the Fund. The record does not establish how much petitioner allocated to each of the elements comprising the $ 25,575. Section 170(a)(1) allows as a deduction any charitable contribution, payment of which is made within the taxable year. An individual has no property right in employee or employer *216 contributions. Consequently, there could not be, and there was not, any transfer of petitioner's or his employers' contributions from his individual social security account to the Nazarene Church or into the general funds of the Treasury, as petitioner requested be done in a letter to the Secretary of the Department of Health, Education, and Welfare. Similarly, the Michigan Public School Employees' Retirement System could not, and did not, honor petitioner's request to have funds in his account transferred to the Nazarene Church or into the general fund of the State of Michigan. It being clear that no payment has been made with respect to the disallowed portion of the deduction, respondent must be sustained on this issue. 1973
There were no income adjustments made by respondent for 1973. There were two deductions that were partially disallowed: interest and contributions. (1) Interest Expense. -- Petitioner was the administrator of his mother's estate and was in charge of all the funds in the estate. Petitioner owed his mother several hundred dollars at the time of her death. During the time he was serving as administrator, he occasionally "dipped in" and borrowed *217 money from the estate. Petitioner paid into the estate $ 1,483.83, as a repayment of the debt to his mother and of the amounts for which he had "dipped in." He claimed an interest expense deduction on the joint return which he and his wife filed for 1973 (hereinafter, "the 1973 return") of $ 1,483.33 for "interest to estate." Respondent disallowed the claimed deduction.
Whatever, if any, portion of the amount paid represented interest is not established in the evidence. To the extent that the amount so paid represented repayment of principal it is a nondeductible repayment of loan principal and not interest. Respondent must be sustained on this issue. (2) Contributions. -- Petitioners claimed a deduction of $ 3,848.70 for contributions on the 1973 return. Respondent allowed $ 3,290 of the claimed deduction, $ 3,190 for contributions to the First Church of the Nazarene and $ 180 to Youth for Christ. He disallowed the remaining $ 558.70. It is believed, and hereby found as fact, that petitioner made cash contributions in relatively small amounts, totalling $ 100, to various churches he attended. Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930). He *218 is accordingly entitled to deduct that amount in addition to the amounts allowed by respondent. 1974
A. Income Adjustment. -- Interest Income. -- Petitioner reported interest income of $ 138.94 on the joint return which he filed with this wife for 1974 (hereinafter, "the 1974 return"). Respondent determined that petitioner had additional interest income for that year of $ 655.29. Petitioner received interest from an individual named Charles Jencka in the amount of $ 550 in 1974. Interest of $ 105.13 was credited to an account maintained by petitioner in the CO-OP Services Credit Union, under the name of Teachers Tax Sheltered Annuity Fund. Both of those amounts represent interest income that should have been reported by petitioner. Respondent is sustained on this issue. The 16 cents difference between respondent's determination and the actual amount earned on the credit union account may be taken care of in the computation under Rule 155. B. Deduction Adjustments. -- (1) Interest expense. -- Petitioners deducted $ 748.04 for home mortgage interest on the 1974 return. Respondent disallowed $ 63.18 of this amount. The disallowed portion is *219 of the same character as the $ 66.66 considered above for 1972, viz, it represents F.H.A. mortgage insurance payments. The deduction has been disallowed for 1972; and for the same reasons, deduction for the same type of payment must likewise be disallowed for 1974. Respondent is sustained on this issue. (2) Sabbatical expense. -- Petitioners claimed a miscellaneous deduction of $ 419 for "Sabbatical in Europe" on the 1974 return.Respondent disallowed the deduction in full. As mentioned above, petitioner was a teacher in the Garden City School District during the years 1972 through 1974. He taught special education classes for the educable mentally handicapped, apparently to sixth grade students. The Garden City Board of Education approved a program submitted by petitioner for study of open classrooms principally in England and granted him sabbatical leave commencing in September 1974 to carry out the program. While on sabbatical leave, petitioner traveled to Europe, with his wife and one of their daughters. Petitioner and his family flew to Zurich where they rented a car and drove to Turin, Italy, where he purchased a Fiat automobile. The family then drove to Denmark, *220 and stayed there for three or four weeks. Departing Denmark, the family motored through Germany, Belgium, the Netherlands, and France, taking a ferry from France to England where they spent the last month of the three-month trip. Upon his return home, petitioner prepared a report for the school board and received course credit from Wayne State University. Petitioner, having the burden of proof to establish entitlement to the deduction, must be found not to have sustained his burden.The evidence, consisting of his testimony and a copy of a journal he kept, fails to establish that a major portion of his activities in Europe directly maintained or improved his skills as a teacher of educable mentally handicapped children. There is not a single school identified as having been visited, and no evidence tending to show a relationship between the places identified in the journal as having been visited and his teaching skills. So far as can be discerned from the evidence, the family's activities appear to have been no different from those expected of tourists on a sightseeing trip abroad. Krist v. Commissioner, 483 F.2d 1345, 1349 (2d Cir. 1973). The school board's *221 approval of the program petitioner submitted and his submission of a report on the trip is not determinative that the required direct relationship between trip activities and job skills exists. Sec. 1.162-5(d), Income Tax Regs.; Gino v. Commissioner, T.C. 304, 308 (1973), reversed on another issue, 538 F.2d 833 (9th Cir. 1976). Similarly, an award of credit does not establish the necessary relationship, absent testimony of the specifics of the relationship to job skill. [4]
Respondent must be sustained on this issue. (3) Taxes. -- Upon the return to the United States from the European trip, petitioner paid customs duty of $ 57 on the Fiat which he had purchased in Italy and brought back with him and continued to use as a family car down to the time of trial. He deducted the $ 57 as a tax on the 1974 return. Respondent disallowed the deduction. No deduction is allowable under Section 164 for Federal import duties or tariffs. Sec. 1.164-2(f), Income Tax Regs. The claimed deduction would be allowable only if it were shown that it is allowable as an ordinary and necessary business expense *222 under section 162, or under section 212. The automobile has been used as a family car -- entirely so, in light of the holding above that the European trip was not business-related. Therefore, the deduction is not allowable and respondent is sustained on this issue. (4) Contributions. -- Petitioners claimed a deduction for charitable contributions on the 1974 return, in the amount of $ 1,391.26. In the notice of deficiency, respondent allowed $ 695 of that amount. On brief he conceded that petitioners are entitled to an additional $ 225. Here, as in the similar situation prevailing in 1973, it is found and held that petitioners are entitled to an additional $ 100 for cash contributions to various churches. Cohan v. Commissioner, supra.
Fraud -- 1972, 1973, and 1974
Respondent has determined that petitioner James Summers (but not petitioner Ketty Summers) is liable for an addition to tax for fraud under section 6653(b) for each of the years 1972, 1973, and 1974. The burden of proving fraud is on the respondent, and he must carry his burden by clear and convincing evidence. Section 7454(a); Rule 142(b), Tax Court Rules of Practice and Procedure. *223 He must show that the taxpayer intended to evade taxes which he knew or believed he owed, by conduct intended to conceal, mislead, or otherwise prevent the collection of such taxes. Stoltzfus v. United States, 398 F.2d 1004 (3d Cir. 1968), cert. denied 393 U.S. 1020 (1969); Webb v. Commissioner, 394 F.2d 366, 377 (5th Cir. 1968), affg. a Memorandum Opinion of this Court; Acker v. Commissioner, 26 T.C. 107, 112-113 (1956). The presence or absence of fraud is a factual question to be determined upon consideration of the entire record. Mensik v. Commissioner, 328 F.2d 147, 150 (7th Cir. 1964), affg. 37 T.C. 703 (1962), cert. denied 379 U.S. 827 (1964); Otsuki v. Commissioner, 53 T.C. 96, 105-106 (1969). Since fraud can seldom be established by direct proof of intention, the taxpayer's entire course of conduct is often relied on to establish circumstantially such fraudulent intent. Stone v. Commissioner, 56 T.C. 213, 223-224 (1971); Otsuki v. Commissioner, supra, at 105-106. After a careful consideration of the record in *224 its entirety, it is believed that respondent has proved fraud by clear and convincing evidence. 1. 1972. -- On November 4, 1971, petitioner submitted a Form W-4 to his employer, the School District, wherein he claimed 28 dependency exemptions. At the time petitioner submitted that W-4, he knew that he was ot entitled to 28 dependency exemptions. Prior to the due date of his 1972 return, petitioner was tried and convicted under section 7205 on charges that he willfully supplied false and fraudulent information on the November 4, 1971, W-4. United States v. James Summers, Docket No. 47174 (E.D. Mich., 1972). As a result of having submitted that W-4, no Federal income tax was withheld from petitioner's wages in 1972. On the 1972 return, filed by petitioner on July 5, 1973, he overstated deductions for charitable contributions by claiming $ 25,575 in contributions to the United States and to the State of Michigan which he knew had not been made. He also included in the medical expenses claimed as a deduction on that return medical insurance premiums of $ 600 which he knew that he had not paid.
Petitioner was tried and convicted under 18 U.S.C. sec. 1001, *225 on the charge of willfully and knowingly making false and fraudulent statements by submitting a 1972 tax return in which he stated that his true deductible charitable contribution was $ 28,063 rather than $ 2,488, and that his medical insurance premiums were $ 600 when they were in fact zero. United States v. Summers, Docket No. 77-80815, Count One (E.D., Mich. 1977). The filing of false W-4's has been held to be an affirmative act of fraud. [5] The falsity of the W-4 operative for most of 1972 has been conclusively established by petitioner's conviction under section 7205. It is well-settled law that the requisite underpayment of tax under section 6653(b) may be accomplished by an overstatement of deductions. Estate of Temple v. Commissioner, 67 T.C. 143, 161 (1976); Hicks Co. v. Commissioner, 56 T.C. 982, 1019 (1971), affd. 470 F.2d 87 (1st Cir. 1972); Neaderland v. Commissioner, 52 T.C. 532, 540 (1969), *226 affd. 424 F.2d 639 (2d Cir. 1970), cert. denied 400 U.S. 827 (1970). The requisite intent may be imposed when a taxpayer claims deductions knowing that he is not entitled to them. Briden v. Commissioner, 11 T.C. 1095, 1133 (1948), affd. subnomKirk v. Commissioner, 179 F.2d 619 (1st Cir. 1950); Miller v. Commissioner, 51 T.C. 915 (1969); Hicks Co. v. Commissioner, supra.
There can be no doubt that petitioner knew when he claimed the above-mentioned overstated deductions that he was not entitled to them. Moreover, by his conviction under 18 U.S.C. sec. 1001, he is estopped from denying that in claiming those overstated deductions he willfully and knowingly did so. The claiming of the overstated deductions whereby he showed no tax due on the 1977 return completed the two-step scheme of defeating the payment of tax which began with the false withholding certificate (Form W-4) that resulted in no tax being withheld currently from his wages. Petitioner is an educated man and a school teacher. He is also a tax protester. He knew fully what he was *227 doing, and the conclusion is inescapable that he did what he did to defeat the payment of tax which he knew to be owing. The underpayment of tax for 1972 was, then, due to fraud with intent to evade tax and respondent should be sustained in his imposition of the addition to tax under section 6653(b) for that year. 2.1973 and 1974. -- On November 13, 1972, petitioner prepared, signed, and submitted to the School District, a W-4, wherein he claimed 30 withholding allowances: four for dependents and 26 for itemized deductions. On an accompanying worksheet he listed his estimated annual salary at $ 20,000 and his total expected itemized deductions at $ 24,000. This W-4 was accepted by the employer and remained effective throughout 1973, with the result that no withholdings of Federal income taxes were made from the wages paid to him in 1973. Thereafter on November 24, 1972, the jury in the district court in Michigan reached a guilty verdict against petitioner on charges of violating section 7205. He was thereafter in February 1973, sentenced to imprisonment and placed on probation for two years. As a special condition of his probation, petitioner was ordered to file a withholding *228 statement indicating the correct number of exemptions and to employ an accountant or accounting firm in connection with the preparation of future income tax returns. On January 3, 1974, the court entered an order revoking petitioner's probation and sentenced him to imprisonment for six months. Thereafter petitioner, through his attorney, filed a request for modification of sentence, in which it was admitted that petitioner had violated his probation. In support of that request, petitioner filed a statement, in which he represented: I, JAMES SUMMERS, make the following statement in support of my Reuest for Modification of Sentence, attached hereto, and affirm that the factual statements made herein are true and the representations made in good faith: 1. Since the day on which this Court imposed a term of imprisonment upon me, I have filed an amended W-4 form with my employer, showing a number of deductions and exemptions which has been approved by the Internal Revenue Service. 2. Since the day on which this Court imposed a sentence of imprisonment upon me, I have submitted my 1973 tax return to the Internal Revenue Service, and that the number of deductions, exemptions *229 and the like has been approved by the said Internal Revenue Service as proper and appropriate under the Internal Revenue Code, as interpreted by the Internal Revenue Service. 3. If this Court sees fit to continue my term of imprisonment, I will, during any period of probation properly imposed by the Court continue to keep my W-4 form current and showing a number of deductions and exemptions approved by the Internal Revenue Service, and proper and appropriate under the Internal Revenue Code as interpreted by the Internal Revenue Service. 4. During any such extended term of probation, I will either submit my yearly tax returns to the Internal Revenue Service for preparation or approval before filing, or have the yearly tax returns either prepared by a certified public accountant or by some other accounting or tax preparation firm specially approved by the Internal Revenue Service for the preparation of my return. On January 25, 1974, the court entered an order modifying sentence, placing petitioner on probation for five years, with the conditions stated by petitioner being the special conditions of his probation. Just prior to filing the request for modification of sentence, *230 on January 22, 1974, petitioner submitted to the School District a W-4 claiming eight withholding allowances, three of which were allocable to dependents and five of which were allocable to withholding allowances for itemized deductions. On the accompanying worksheet petitioner estimated his itemized deductions to be $ 5,450; on the 1974 return ultimately filed, itemized deductions were $ 5,684.72. Some four months later, on May 23, 1974, petitioner submitted a new W-4 to the School District, superseding that of January 22, 1974, which was accepted by the employer. On the May W-4 petitioner claimed a total of 20 withholding allowances, three for dependents, one special withholding allowance, and sixteen withholding allowances for itemized deductions based on a claimed total of estimated itemized deductions of $ 14,170.49. His total estimted annual income shown on the accompanying worksheet was $ 18,245. Petitioners' 1973 and 1974 returns were not filed until October 14, 1977, after petitioner was convicted in August 1977 under section 7203 for willful failure to file a return for 1973 and 1974. United States v. James A. Summers, Docket No. 77-80815, Counts Two and Three *231 (E.D. Mich., 1977). First and foremost of the indications of petitioner's fraudulent intent for 1973 and 1974 is his willful failure to file returns for those years when they were due, of which he stands convicted by the district court in Michigan.Failure to file returns, however, does not in itself establish fraud. Nevertheless, such failure may be properly considered in connection with other facts indicative of fraud. His submission of the false W-4 in November 1972, claiming 30 withholding allowances, which remained extant throughout 1973 with the result that his employer withheld no Federal withholding taxes in that year, is an indication of fraud. Then in 1974, after submitting a clean W-4 in January in order to effect a modification of his sentence, in May he flagrantly reversed his field (violating his representation to the district court) and submitted another false W-4 claiming 20 withholding allowances with the result that there was an under withholding (predicated on the January 1974 W-4) for 1974. Moreover, after representing to the district court that he would file returns, he nevertheless did not do so until he was convicted for his failure. All of this can only *232 be regarded as a continuation of the pattern set in 1972 of violating a known legal duty to pay his taxes. Petitioner would seek to extricate himself by pointing to the fact that he wrote the Commissioner of Internal Revenue on April 12, 1974, stating that he would not file his 1973 return until he received an explanation of seizures made from a bank account. That position is of no help to petitioner. [6]
It is believed that respondent has carried his burden of proof and that his imposition of additions to tax for each of the years 1973 and 1974 under section 6653(b) should be sustained. It thus becomes unnecessary to consider respondent's alternative position -- that if fraud was not proved, petitioner was liable for additions to tax under section 6653(a) for negligence or intentional disregard of rules and regulations. Decision will be entered under Rule 155. Footnotes
1. The term "petitioner," in the singular will have reference to James Summers. ↩
2. All section references are not the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩
3. Respondent conceded one income adjustment at the trial: $ 22.60 from Co-Op Services Credit Union.↩
4. Staton v. Commissioner, T.C. Memo. 1969-250↩.
5. Best V. Commissioner, T.C. Memo. 1981-251; Raley v. Commissioner, T.C. Memo. 1980-571; Nielson v. Commissioner, T.C. Memo. 1980-453; Forbush v. Commissioner, T.C. Memo. 1979-214↩.
6. See Raley v. Commissioner, T.C. Memo. 1980-571↩, where a similar position urged by the taxpayer was rejected.