ROBERT E. REIDENBACH, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Reidenbach v. Commissioner
Docket No. 11594-78.
United States Tax Court
T.C. Memo 1981-642; 1981 Tax Ct. Memo LEXIS 101; 42 T.C.M. (CCH) 1612; T.C.M. (RIA) 81642; November 3, 1981. *101 P, a high school geography teacher, took an extensive trip overseas in 1975. Held, the cost of such trip is not deductible as an ordinary and necessary business expense under sec. 162(a), I.R.C. 1954, and sec. 1.162-5(d), Income Tax Regs., since he failed to show that the major portion of his activities directly maintained or improved skills required by him in his employment. Robert E. Reidenbach, pro se. Janet A. Engel, for the respondent. SIMPSON
MEMORANDUM FINDINGS OF FACT AND OPINION SIMPSON, Judge: The Commissioner determined a *102 deficiency of $ 919.35 in the petitioner's Federal income tax for 1975. The issue to the decided is whether the petitioner, a high school geography teacher, is entitled to deduct as educational travel expenses under section 162(a) of the Internal Revenue Code of 1954[1] the costs of an overseas trip. FINDINGS OF FACT Some of the facts have been stipulated, and those facts are so found. The petitioner, Robert E. Reidenbach, resided in Chicago, Ill., at the time he filed his petition in this case. He timely filed his Federal income tax return for 1975 with the Internal Revenue Service. In September 1964, the petitioner began teaching high school history in the Chicago Public School System. From 1964 through 1967, he took 18 credits in geography and received certification to teach such subject in December 1967. He commenced his first teaching position in geography in September 1968. The petitioner taught geography full time at Marshall High School, an all Black school, from 1968 through 1974, using the text World Geography Today as the basis of *103 his course. The substance of such text explores both physical and cultural geography. In 1974, the petitioner taught five world geography courses per day, following such text fairly closely as to the material covered. Sometime prior to the fall of 1974, the petitioner applied for and was granted sabbatical leave for the purpose of travel effective September 2, 1974. As part of his request for leave, he submitted an itinerary to the Chicago Board of Education listing the places he intended to visit. The petitioner was free to change the itinerary without the board's approval. The sabbatical was approved, and the petitioner commenced such paid sabbatical on September 2, 1974. From September to December 1974, the petitioner visited in New York City, staying primarily with his cousin. During this period, the petitioner took some forays into the Eastern portion of the United States. In early December 1974, he procured tickets and visas and commenced his trip overseas. During the next 6 months, the petitioner traveled extensively, covering a total of 18 countries, as follows: Date
Place
12/9/74
New York
12/9/74 - 12/12/74
Barbados
12/12/74 - 12/16/74
Trinidad
12/16/74 - 12/19/74
Venezuela
12/19/74 - 1/6/75
Brazil
1/6/75
Paraguay
1/6/75 - 1/15/75
Chile
1/15/75 - 1/23/75
Argentina
1/23/75 - 1/29/75
Uruguay
1/29/75 - 2/12/75
Brazil
2/13/75 - 3/17/75
South Africa
3/17/75 - 3/26/75
Bostswana
3/26/75 - 4/5/75
Rhodesia
4/5/75 - 4/7/75
Mozambique
4/7/75 - 4/13/75
Malawi
4/13/75 - 4/18/75
Mauritius
4/18/75 - 5/8/75
Australia
5/8/75 - 5/15/75
New Zealand
5/15/75 - 5/19/75
Raratonga
5/19/75 - 5/21/75
Tahiti
5/21/75
United States
*104 The petitioner did not participate in an organized tour, preferring to determine his activities in each country without the benefit of advance planning. Prior to the trip, the petitioner did not correspond with foreign embassies or arrange any appointments with foreign officials. During the trip, he did not contact any local consulates to secure information useful to him in his classes; nor did he attempt to contact responsible foreign individuals who could assist him in securing educational information. The petitioner's entire trip was centered around his own individual travel method of "casual socialization." The petitioner went to Rio de Janiero, stayed with the mother of his college roommate, and decided to return there in time for Carnival. In Brazil, he met businessmen socially, and although he discussed commerce with them, much of the discussion was devoted to his revealing economic conditions in the United States. When in Chile, the petitioner spoke with a man at the train station about political life there. The petitioner made no advance plans to see the country, nor did he have a particular objective in Chile. In Argentina, the petitioner met a man in a sauna who *105 was reading Time magazine. On deciding that such man would be a reliable source of information, the petitioner questioned him about the Peron regime. In Uruguay, the petitioner received erroneous information concerning the population from one of several casual acquaintances who served as his source of information. In South Africa, the petitioner was exposed to the harsh ramifications of apartheid but could not tour Soweto because of his failure to make advance plans. To escape the rainy season in Johannesburg, the petitioner went to Durban, a beach resort city, where he had vivid memories of winning $ 150 in 1 day in a casino. The petitioner visited the Herreros, a bushman tribe, where he took a number of slides and noted that women did all the work. In Rhodesia, the petitioner saw Victoria Falls under a full moon, and in Mozambique, he was impressed by the fact that there was a revolution developing. The petitioner visited racetracks in every country that had the sport. In addition, he frequented discotheques, bars, and casinos regularly. In fact, the petitioner stayed on in one town solely because of the presence of a casino. His activities also included a fair amount of *106 sitting around at sidewalk cafes and other leisurely pastimes. The petitioner carried a camera with him on his trip and took over 600 slides. Such slides were used in his classroom lectures on world geography. Prior to this trip, the petitioner used slides in his classes from other trips he had taken as a part of his teaching method. It was the petitioner's teaching practice to relate his experiences about the places he had visited and the things he had seen and done with the slides. The petitioner kept a diary during his trip. Such diary was kept for personal reasons, but it did contain some listings of foreign phrases and expressions gleaned from the countries visited. The diary contained no information useful to his classes and highlighted the haphazard and personal nature of the trip. While making some references to where he stayed and ate, the petitioner's diary was admittedly incomplete, though the following amounts of expenditures were noted: lodging $ 153.06, meals $ 32.06, transportation $ 78.74, film $ 9.09, and personal expenditures $ 91.38. In addition to those expenditures, the petitioner has substantiated air travel expenses in the amount of $ 2,367.60. Upon *107 returning from sabbatical leave, the petitioner was reassigned to Kelvyn Park High School, another school in the Chicago Public School System. At that time, Kelvyn Park was 40 percent Latino, although there was no evidence that the petitioner knew when he commenced his trip that he would be assigned to such a school. On his Federal income tax return for 1975, the petitioner deducted a total of $ 5,047 as an educational travel expense relating to his trip. The petitioner arrived at this figure by including his airfare and by estimating that his other expenses for meals and lodging, etc., averaged $ 20 per day. [2] In his notice of deficiency, the Commissioner disallowed the entire deduction on the grounds that the trip lacked a business purpose within the meaning of section 162(a) and that the expenditures were not substantiated in accordance with section 274. OPINION The issue to be decided in this case is whether the petitioner's overseas trip qualifies as a deductible educational travel expense under section 162(a). The petitioner seeks to *108 deduct the expenses of his trip as an ordinary and necessary business expense. He claims that taking such trip maintained and improved his skills as a geography teacher, and accordingly, the cost of such trip qualifies as a deductible educational expenditure in accordance with the Income Tax Regulations. Both the petitioner and the Commissioner rely on such regulations promulgated under section 162 as to the deductibility of educational travel expenses, which provide, in part: Sec. 1.162-5 Expenses for education. (a) General rule. Expenditures made by an individual for education * * * are deductible as ordinary and necessary business expenses * * * if the education-- (1) Maintains or improves skills required by the individual in his employment * * * (d) Travel as a form of education. * * * expenditures for travel (including travel while on sabbatical leave) as a form of education are deductible only to the extent such expenditures are attributable to a period of travel that is directly related to the duties of the individual in his employment or other trade or business. For this purpose, a period of travel shall be considered directly related to the duties of an individual *109 in his employment or other trade or business only if the major portion of the activities during such period is of a nature which directly maintains or improves skills required by the individual in such employment or other trade or business. The approval of a travel program by an employer * * * is not determinative that the required relationship exists between the travel involved and the duties of the individual in his particular position. (e) Travel away from home. (1) If an individual travels away from home primarily to obtain education the expenses of which are deductible under this section, his expenditures for travel, meals, and lodging while away from home are deductible. However, if as an incident of such trip the individual engages in some personal activity such as sight-seeing, social visiting, or entertaining, or other recreation, the portion of the expenses attributable to such personal activity constitutes nondeductible personal or living expenses and is not allowable as a deduction. If the individual's travel away from home is primarily personal, the individual's expenditures for travel, meals and lodging (other than meals and lodging during the time spent in participation *110 in deductible education pursuits) are not deductible. * * * The regulations under section 162 require the petitioner to show that the major portion of his activities directly maintained or improved skills required in his employment as a geography teacher in order to qualify for deductibility. Such a determination is one of fact, turning on all the individual circumstance of each case. See Gino v. Commissioner, 60 T.C. 304 (1973), revd. per curiam on another issue 538 F. 2d 833 (9th Cir. 1976), cert. denied 429 U.S. 979 (1976); Marlin v. Commissioner, 54 T.C. 560 (1970). The petitioner bears the burden of establishing that he meets the requirements for deducting his travel expenditures. Rule 142(a), Tax Court Rules of Practice and Procedure; Welch v. Helvering, 290 U.S. 111 (1933); Gino v. Commissioner, supra at 309; Marlin v. Commissioner, supra at 566. After a review of the entire record, we find that the petitioner has failed to carry his burden of proof. The petitioner was a high school world geography teacher. As such, it was his classroom function to impart *111 substantive educational information about various parts of the world to his students. The syllabus of a high school course in world geography encompasses not only a study of the physical aspects of different areas of the world, such as terrain, vegetation, and climate, but also the cultural aspects of the different people inhabiting the earth. Such latter study integrates the social science fields of history, economics, sociology, and anthropology, making the overall course a truly diversified one for study. At the time the petitioner applied for sabbatical leave, it was his expressed intention of learning firsthand about the places he covered in his classroom. Though he had traveled before, the petitioner's substantive educational background in geography was admittedly limited to those courses he had taken from 1964 through 1967 in order to become certified to teach the subject. His background knowledge of the areas he visited on such trip was also limited. If it were the petitioner's purpose truly to learn about these countries, he should have made advance plans to meet people who might provide him with useful educational information about the cultural and physical aspects *112 of such countries. Furthermore, upon arrival in these countries, we find that the petitioner could have done more to secure the kind of accurate information that would be interesting and useful in his classes. He made no attempt to secure any information from local consulates, nor did he make any attempts to secure assistance in determining the locations of responsible foreign individuals who would be able to provide him with useful educational information. [3] The lack of advance planning and study and the utter failure to secure comprehensive and reliable information about the areas visited strongly contradict the petitioner's claim that he was on an educational trip. We do not view the petitioner's method of "casual socialization" as a satisfactory equivalent. The fact that he discussed the commerce of Brazil with friends at a New Year's Day party, that he learned about Peron from a man whom he met in a sauna, and that he discussed conditions in Chile with a casual acquaintance in a railway *113 station, all indicate that the petitioner was not selective in the information which he secured, and information secured in that manner was not reliable and was not the type to be used in the Chicago classrooms. While we do not doubt that the petitioner got something out of these experiences, we find the educational nexus of such encounters to be at best incidental. See Krist v. Commissioner, 483 F. 2d 1345 (2d Cir. 1973), revg. a Memorandum Opinion Opinion of this Court; see also Gino v. Commissioner, supra.
The petitioner maintains that his expressed desire was to learn as much about each country as he could "in his own way." Yet, if his true purpose was to learn about the geography of the country, we question why the petitioner spent such a large portion of his time lounging about in hotels and bars. The record reveals that the petitioner spent time in casinos, bars, and discotheques. While such leisure does not per se condemn an otherwise educational trip, we find that the petitioner was unduly interested in these pursuits. He testified at trial that he visited racetracks in every country that had the sport and enjoyed rubbing shoulders *114 with the locals. His diary indicates that he stayed in one town merely because of the presence of a casino. At trial, when questioned about his gambling, the petitioner remarked, "If I had won money, I would still be there." We conclude from these facts that the petitioner's "own" style of learning is objectively unsatisfactory. We find any actual educational benefit gained from these experiences to be de minimis. Though the petitioner argues that the amount of time spent at such leisure-time activities was small, a careful perusal of the diary indicates otherwise. Section 1.162-5(e)(1), Income Tax Regs., points out that an important factor going into the determination as to whether a trip is primarily personal or primarily to obtain an education is the relative amount of time devoted to personal activities as compared with the time devoted to educational pursuits. Upon a detailed review of the diary, we conclude that the trip was primarily personal. In addition, even though the petitioner took slides, and he argues that such slides were of use to him in the classroom, it is clear that the "major portion" of his activities was not "directly related" to his teaching duties. See *115 sec. 1.162-5, Income Tax Regs. The taking of such slides involved little more than an incidental part of his travels. We reject the petitioner's contention that his travel should be classified as educational because of the fact that he documented his whereabouts on slides. The record reveals that the petitioner meandered about without a definitive educational objective. We find that the slides only serve to show that the petitioner in fact visited the places documented. Such slides do not show that the petitioner possessed any educational objective. In fact, we find nothing in the record distinguishing the petitioner's slides from those of an ordinary tourist. See Gino v. Commissioner, supra.
The petitioner argues that he should be entitled to a deduction for his trip since his "every waking moment was spent as a sponge absorbing as much of the immediate reality as he could." We find such argument to be unpersuasive. He is not entitled to a deduction merely because his subject was world geography and he went on an overseas trip. The fortuitous fact that the petitioner was a world geography teacher is of no avail, since we have found any educational benefit *116 of such trip to his classroom instruction to be incidental. The petitioner is a sincere and conscientious teacher. We do not doubt that his travels have broadened his view and enabled him to acquire the slides that have been useful to him in his classes. It may very well be that the petitioner's use of slides served to increase his rapport with his students. However, this incidental benefit is also insufficient to qualify the trip as an educational one. Cf. Gino v. Commissioner, 60 T.C. at 310; see also Fugate v. United States, 259 F. Supp. 398 (W.D. Tex. 1966), affd. per curiam 386 F. 2d 188 (5th Cir. 1967). To be entitled to a deduction for traveling, both the regulations and the courts require that the major portion of the traveling be devoted to educational purposes, and the incidental benefits derived by the petitioner here do not fulfill that requirement. Gino v. Commissioner, 60 T.C. at 310; Krist v. Commissioner, 483 F. 2d at 1350. Accordingly, we conclude that the petitioner may not deduct the costs of his trip as an educational travel expense under section 162. Having reached this conclusion, *117 it is unnecessary for us to reach the question of substantiation under section 274. Decision will be entered for the respondent. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 as in effect during 1975.↩
2. The petitioner based his calculation on 142 days of travel in 1975. The $ 5,047 deducted does not follow from his method.↩
3. Compare Marlin v. Commissioner, 54 T.C. 560↩ (1970), where the taxpayer's advance planning in deciding where to go and what to see weighed heavily in her favor.